In the Interest of Gregory EBERTZ.

Michael SCHMIDT, Ph.D., Petitioner
and Appellee,

v.

Gregory EBERTZ, Respondent
and Appellant.

Civ. No. 10437.

Supreme Court of North Dakota.

May 4, 1983.

Wendy P. Schulz, Asst. State's Atty., Jamestown, for petitioner and appellee.

Hjellum, Weiss, Nerison, Jukkala, Wright & Paulson, Jamestown, for respondent and appellant; argued by Terence J. Paulson, Jamestown.

SAND, Justice.

Gregory Ebertz appealed from an order for alternative outpatient treatment at the South Central Human Service Center in

Jamestown, North Dakota, issued by the Stutsman County Court on 16 March 1983.

On 26 February 1983 Ebertz was taken to the North Dakota State Hospital following a suicide attempt. Ebertz was admitted to the State Hospital on an emergency commitment pursuant to North Dakota Century Code § 25–03.1–25. After a conference with Michael Schmidt, Ph.D., Ebertz voluntarily admitted himself to the State Hospital for treatment on 28 February 1983. On 14 March 1983 Ebertz executed a written request for release, and on the same date the superintendent of the State Hospital, R.A. Aligada, M.D., gave notice that the request for release was postponed until judicial proceedings for involuntary treatment were held. A petition for involuntary commitment, signed by Schmidt, was filed in Stutsman County Court on 15 March 1983 and a treatment hearing was held on 16 March 1983.

Prior to the introduction of evidence at the treatment hearing, Ebertz moved to dismiss the petition on the ground that the petitioner failed to comply with the emergency commitment provisions of NDCC ch. 25–03.1. Specifically, Ebertz contended that the petition should be dismissed and he should be released because the petitioner or the authorities failed to file a petition within twenty-four hours of the emergency commitment on 26 February 1983 as required by NDCC § 25–03.1–26(1). The court denied Ebertz' motion on the grounds that NDCC § 25–03.1–26(1) did not apply because Ebertz had voluntarily admitted himself to the State Hospital on 28 February 1983 and that voluntary admission foreclosed any review of the emergency commitment procedures on 26 February 1983. Thereafter the treatment hearing continued and evidence was introduced. At the conclusion of the treatment hearing, the court concluded that Ebertz was in need of treatment and committed him to the South Central Human Service Center for treatment on an outpatient basis for a period not to exceed 90 days.

Ebertz applied to the district court for a writ of habeas corpus and on 23 March 1983 the district court issued a writ and set a hearing for 12 April 1983. Following the hearing, the district court quashed the writ on the ground that Ebertz had available an expedited right to appeal to this Court. On 14 April 1983 Ebertz appealed to this Court from the alternative treatment order dated 16 March 1983.

The only issue raised by Ebertz is whether or not the county court had the "authority" to determine whether or not the emergency commitment provisions of NDCC ch. 25–03.1 had been complied with for the period of time from 26 February 1983 until Ebertz voluntarily admitted himself on 28 February 1983. Specifically, Ebertz contended that the provisions of NDCC § 25–03.1–26(1) were not complied with. That section provides as follows:

"The state hospital or public treatment facility must immediately accept and a private treatment facility may accept on a provisional basis the application and the person admitted under section 25–03.1–25. The superintendent or director shall require an immediate examination of the subject and, *within twenty-four hours after admission, shall either release the person if he finds that the subject does not meet the emergency commitment standards, or file a petition* with the magistrate of the county of the person's residence giving notice to the court and stating in detail the circumstances and facts of the case." [Emphasis added.]

Ebertz contended that the failure to file the petition within twenty-four hours of the emergency commitment proceedings deprived the county court of jurisdiction to proceed with the instant treatment hearing and, for that reason, he should be released, or in the alternative the case should be remanded to the county court for a review of the emergency commitment proceedings prior to his voluntary admission to determine whether or not his rights were violated.[1]

---

1. We note that Ebertz' brief to this Court contains the following recitation:

"At the habeas corpus hearing, Respondent

The commitment hearing from which Ebertz appealed was held pursuant to NDCC § 25–03.1–06, which provides as follows:

"Any person voluntarily admitted for inpatient treatment to any treatment facility or the state hospital shall be orally advised of the right to release and shall be further advised in writing of his rights under this chapter. A voluntary patient who requests his release shall be immediately released. However, if the superintendent or the director determines that the patient is a person requiring treatment, the release may be postponed until judicial proceedings for involuntary treatment have been held in the county where the hospital or facility is located. The patient must be served the petition within twenty-four hours, exclusive of weekends and holidays, from the time release is requested, unless extended by the magistrate for good cause shown. The treatment hearing shall be held within five days, excluding weekends and holidays, from the time the petition is served."

The scope of the judicial proceedings to determine if the respondent, as defined in NDCC § 25–03.1–02(14), is "mentally ill" or a "person requiring treatment," as defined in § 25–03.1–02, subsections (10) and (11), consists of a hearing which embraces all of the concepts of due process. The procedures, including the right to counsel, generally are comparable and similar to those followed in criminal cases. *See* NDCC §§ 25–03.1–02(11); 25–03.1–06; 25–03.1–07; 25–03.1–11; 25–03.1–13.

While the involuntary commitment or alternative procedures mirror those used and followed in criminal cases, the similarity ends there. In criminal cases the public is aligned against the defendant (State or People v. Defendant), whereas in involuntary commitment, a civil case, the state or people are either neutral or are aligned with the respondent. The purposes and the objectives of the two systems are substantially different. The purposes and objectives of criminal law are to protect the public, punish or sanction the criminal or the class of criminals, to deter crimes, and to develop respect for the law; whereas, in involuntary commitment or alternative treatment procedures, the objective and primary purpose is to determine if the respondent needs medical treatment and, if so, to provide it for the benefit of the individual and the general public. This clearly illustrates a vast difference between the two procedures, even though the procedures in some respects may be similar. This difference also needs to be taken into consideration whenever the procedures inadvertently and technically were not followed. In criminal cases the constitutional protection against double jeopardy is designed to safeguard and protect the individual. The suppression of evidence in criminal cases (exclusionary rule) which was implemented by

testified that he signed the voluntary admission following a conversation with Dr. Schmidt who informed Respondent that, in Dr. Schmidt's opinion, Respondent required treatment. Dr. Schmidt then sought to have Respondent sign a voluntary admission rather than going to court since it was Dr. Schmidt's opinion that the hearing would only be a formality and that Respondent would be committed for a period of 90 days. Based on Dr. Schmidt's representation, Respondent signed in voluntarily.

"In addition, the above conversation with Dr. Schmidt took place at a time when Respondent had not been informed of or provided with the notice and statement of rights required by N.D.C.C. § 25–3.1–27 [*sic*]. That section requires, among other things, that Respondent be provided with a written statement in simple terms explaining the rights of the individual to a preliminary hearing, to be present at the hearing and to be represented by legal counsel, if he is certified by an expert examiner or examiners as a person requiring treatment. Further, 14 days is the maximum time Respondent could have been ordered to undergo treatment following a preliminary hearing and not the 90 days as Dr. Schmidt suggested. N.D.C.C. § 25–3.1–17 [*sic*]

"Under these circumstances it cannot be said that Respondent waived his right to contest Petitioner's failure to comply with the emergency commitment procedures. In fact, Petitioner may be estopped to allege that Respondent's signing of the voluntary admission was a voluntary act on his part." However, the record of the habeas corpus hearing is not before us. We are not suggesting that it should be.

and is again being considered by the United States Supreme Court and other similar "remedies," are employed for various given reasons and in most instances inure to the benefit of the defendant. However, if the same "remedies" were strictly applied to involuntary commitment cases they would produce unwarranted negative results.

As an example, let us assume that during an involuntary commitment procedure an error was made by some person other than the respondent, and the error is of such magnitude that in a criminal case it would result in a mistrial, putting into operation double jeopardy, and let us further assume that the respondent is in real need of mental treatment primarily for the respondent's own benefit, we then ask the question: Should double jeopardy become operative to prevent a rehearing, and, if so, would it do justice to the respondent? If it were employed, we believe it would really harm the respondent who is in need of medical treatment. Let us also assume that certain evidence was obtained improperly, but is otherwise reliable and relevant, should such evidence be subject to suppression, and, if it were, would it be beneficial to the respondent? We have reservations that it would. These illustrations clearly establish that the hearing officer or presiding judge and other individuals concerned must exercise great care to assure the public, and particularly the respondent, of due process and that the procedures are in accordance with the principles of law and justice.

In some instances the respondent may be mentally ill to the extent of being unable to make a rational decision, in which case the procedure takes on a greater significance.

However, in the instant case the court observed during the hearing that the respondent was an intelligent individual. This may have a direct bearing on the question whether or not the respondent knowingly admitted himself voluntarily, or was the result of a misunderstanding, but this is not an issue before us.

We also note that the respondent openly admitted that he needed medical treatment and he had been aware of this for some time.

In the final analysis, a proceeding for involuntary commitment or alternative treatment (NDCC § 25–03.1–21) is more for the benefit of the respondent than for anyone else.

We are ultimately concerned that the respondent was afforded due process at the hearing regarding the determination of whether or not the respondent should be involuntarily committed or given alternative treatment. If due process was afforded, the decision [2] will stand. If due process was not afforded, then a new hearing must be had unless the evidence established that respondent is not in need of treatment or involuntary commitment.

Although there may or may not have been a violation of NDCC § 25–03.1–26(1) and Ebertz may or may not have voluntarily admitted himself for treatment on 28 February 1983 (see footnote 1), we do not believe those issues are relevant to the instant action in which the scope of inquiry is limited solely to whether or not the respondent is a person requiring treatment.

We conclude the county court did not err [3] in denying Ebertz' motion to dismiss the petition.

---

**2.** Both the majority opinion and the special concurring opinion in *Interest of Rambousek,* 331 N.W.2d 548 (N.D.1983) criticized the use of preprinted forms and urged the trial court to enter full and specific findings of fact showing the underlying basis for the decision. We reemphasize the importance of specifically setting out the findings of fact. The use of preprinted forms does not meet the basic standards of justice. It defies logic to assume that in every case a "finding of fact" can be squeezed into one of the predetermined findings of fact slots.

**3.** Even though we conclude that no error was committed in denying the motion to dismiss the petition, we do not imply or suggest that the statutory procedures need not be followed. To the contrary, we believe the statutory procedures must be followed and, regarding the petition, were followed, but the same is not true regarding the emergency commitment. However, this did not carry over to the hearing on the petition.

PEDERSON and VANDE WALLE, JJ., concur.

ERICKSTAD, C.J., and PAULSON, J., concur in the result.