**In the Interest of Thomas GUST.**

**John GUST, Petitioner and Appellee,**

**v.**

**Thomas GUST, Respondent and Appellant.**

**Civ. No. 10634.**

Supreme Court of North Dakota.

March 5, 1984.

---

Daniel Crothers, Asst. State's Atty., Grafton, for petitioner and appellee.

Hodny, Burke, Rice & Stevenson, Grafton, for respondent and appellant; argued by Jon C. Stevenson, Grafton.

SAND, Justice.

Thomas Gust (Thomas) appealed an involuntary treatment order of 31 January 1984 requiring him to undergo treatment other than hospitalization for a period of ninety days.

Initially, pursuant to North Dakota Century Code Ch. 25–03.1, the court, on 16 January 1984, ordered Thomas to undergo temporary treatment and evaluation for fourteen days at the Jamestown Hospital on the petition of John Gust (John), the father of Thomas. Subsequently, a hearing was scheduled and held on 30 January 1984, at Grafton, North Dakota, the home town of Thomas, after which the court, on 31 January 1984, issued the order requiring Thomas to undergo alternative treatment. Thomas appealed.

Thomas contended (1) that the court erred by allowing the petitioner's sole expert witness (Carl Westphal, Ph.D., from the Jamestown Hospital), over his objection, to testify by telephone rather than by

personal appearance; and (2) that the order was not supported by clear and convincing evidence.

Thomas argued that the witness was required to be present in court pursuant to Rule 43(a), North Dakota Rules of Civil Procedure, which in pertinent part provides:

"In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by statute or these rules."

■ The State responded that the expert's testimony by telephone was "orally in open court" and, furthermore, the judge, under Rule 3(A)(7)(a), Rules of Judicial Conduct, had the authority to permit testimony by telephone. Rule 3(A)(7)(a) provides in pertinent part as follows:

"(7) ... except that a judge may authorize:

(a) the use of electronic or photographic means for the presentation of evidence, for the perpetuation of a record, or for other purposes of judicial administration;"

This rule is primarily concerned with broadcasting, recording, televising, or taking pictures in the courtroom rather than the presentation of testimony at the trial. The language, "use of electronic or photographic means," basically authorizes such means as an aid but does not override other rules or statutes on the same subject matter. Even so, it is permissive and, as such, justification must be established to permit the use of those means.

"Oral examination" is defined in NDCC § 31–04–04:

"An oral examination is an examination in the presence of the jury or tribunal which is to decide the fact or act upon it, the testimony being heard by the jury or tribunal from the lips of the witness."

This definition is clear and unambiguous and needs no further comment. In addition, Rule 3.2(c) of the Rules of Court, in a sense, limits telephonic conferences. It provides in part as follows:

"The court, with the consent of all parties affected, may hear oral *argument* on any motion by telephonic conference." [Emphasis added.]

Generally, arguments on motions are submitted by brief. In most instances no testimony is offered in support of or in opposition to a motion, yet, consent of all of the parties must be obtained before oral argument by telephonic conference will be permitted.

Black's Law Dictionary (5th ed.) defines:

"Open court. This term may mean either a court which has been formally convened and declared open for the transaction of its proper judicial business, or a court which is freely open to spectators."

"Oral evidence. Evidence given by word of mouth; the oral testimony of a witness. See Parol evidence."

"Parol evidence. Oral or verbal evidence; that which is given by word of mouth; the ordinary kind of evidence given by witnesses in court.... See also ... Oral evidence."

■ Taking into consideration the foregoing rules, statutes, and definitions we are convinced "orally in open court" means that a witness testifying in a case must be present in court so that the trier of fact may observe the demeanor of the witness. However, by agreement of the parties, with approval of the court, the testimony may be presented otherwise, including the use of audiovisual means. None of these factors were present in this case. We recognize the inappropriateness of issuing advisory opinions and, therefore, abstain from setting forth under what other conditions, if any, testimony by telephone may be used.

This court has not previously ruled on this precise issue, but in *State v. Brown*, 337 N.W.2d 138 (N.D.1983), we peripherally touched upon this question. We held that videotapes of the hypnotic session of the complaining witness could be introduced on rebuttal to show how the session was conducted and that no undue or improper influences were suggested to the witness but

the hypnotic session may not be considered testimony as independent proof of the facts recited by the witness. We observed that the court should have given, but did not give, an appropriate precautionary instruction.

The annotation in 80 A.L.R.3d 1212, Use of Television to Interview Absent Witness, discussed the use of closed circuit television in *Kansas City v. McCoy*, 525 S.W.2d 336 (Mo.1975). The court, in a 4–3 decision, held that a closed circuit television could be used to present evidence in the prosecution of a violation of a city ordinance which was more in the nature of a civil rather than a criminal action. We note that even though the instant case is a civil matter, many of the criminal procedures are used. See, *Schmidt v. Ebertz*, 333 N.W.2d 786 (N.D. 1983).

We nevertheless note that a substantial difference exists between testifying by telephone as distinguished from testifying by closed circuit television or audiovisual tape. In closed circuit television the image of the witness appears but the focus of the camera may not correspond to the focus of the trier of facts, who must rely upon the demeanor of the witness in judging the witness' credibility. Neither does the camera show who is present or who may be aiding the witness.

We recognize that testimony by closed circuit television even though the image of the witness is seen has its shortcomings. But in testimony by telephone the image of the witness cannot be seen nor does it disclose if the witness is using or relying upon any notes or documents and, as a result, meaningful communication is effectively curtailed or prevented. Thus testimony by telephone has greater defects and more undesirable factors than testimony by closed circuit television. Above all, in testimony by telephone the trier of facts is put in a difficult, if not impossible, position to take into account the demeanor of the witness in determining the witness' credibility.

The United States Supreme Court in *Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323, 329 (1979), held that the standard of proof for involuntary commitment is by clear and convincing evidence rather than by the preponderance of evidence or beyond a reasonable doubt. In reaching its conclusion the Court observed:

"The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of fact finding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'"

The Court then also observed:

"... standards of proof are important for their symbolic meaning as well as for their practical effect."

In our opinion, the same concepts and ideologies apply to procedures and due process which, in many instances, are inseparable.

With regard to proper procedure and due process, we must give full credit to NDCC § 31–04–04 which requires the presence of the witness in the courtroom. While the involuntary commitment procedures are civil in nature, nevertheless the procedures employed, except for double jeopardy, standard of proof and other related matters, closely follow the procedures in criminal matters. This is particularly true where individual liberty is involved.

■ We conclude that witnesses in an involuntary commitment proceedings under NDCC Ch. 25–03.1 must be present in court to present oral testimony unless all the principal parties, including the respondent, with the court's approval, agree otherwise.

■ In line with the thoughts expressed in this opinion, we reverse the involuntary alternative treatment order for the reason that the principal testimony against Thomas was heard by telephone rather than being present in court. We trust that Thomas will voluntarily continue with the alternative treatment order and proceed with his recovery. As noted before, double jeopardy does not apply and the appropriate parties may initiate another proceeding and hearing if necessary to determine whether

or not Thomas should continue to receive involuntary alternative treatment.

Because of our disposition of the first issue we need not and do not consider the second issue.

■ In the interest and furtherance of justice we are constrained to make comments on the use of preprinted forms. In the case entitled *In the Interest of Rambousek*, 331 N.W.2d 548 (N.D.1983), and in footnote 2 in the case entitled *In the Interest of Ebertz*, 333 N.W.2d 786 (N.D.1983), we criticized the use of preprinted forms and reemphasized the importance of setting out findings of facts specifically. We also said that plain logic defies an assumption or conclusion that findings of fact can be squeezed into any of the predetermined findings of fact slots. The forms have value and may be used as a checklist, but are not appropriate for findings of fact or an order. More specifically, the forms do not provide for setting out the specific facts upon which the order is based. In addition, most of the alternative statements in the form are mere conclusions. Furthermore, the forms do not carry out the intent of Ch. 25–03.1 and may per se constitute a basis for reversing or setting aside an involuntary commitment or treatment order.

ERICKSTAD, C.J., and GIERKE and VANDE WALLE, JJ., concur.

PEDERSON, Justice, concurring in the results.

The Legislature has, in my opinion, prescribed an unduly complicated procedure for the judiciary's role in the involuntary treatment of mental illness. Nevertheless, it has provided:

"The hearing shall be conducted in as informal a manner as practical ...." Section 25–03.1–19, NDCC.

Somewhat analogous are the proceedings involving the chemical tests for intoxication; certain reports and statements become a part of the court record as directed by specific statutes. Compare § 25–03.1–11, NDCC relating to a mental examination report and § 39–20–07(8) and (10), NDCC relating to blood alcohol tests.

Thomas has not challenged the admission of the report on constitutional or any other grounds. Due process, of course, requires fair hearings. The cases of *In Re Township 143 North, Range 55 West, Cass County*, 183 N.W.2d 520 (N.D.1971) and *Williams Electric Coop. v. Montana-Dakota Util. Co.*, 79 N.W.2d 508 (N.D.1956) have explained that hearings are unfair when the defect complained of is such as might lead to a denial of justice.

The telephonic testimony in this case did not lead to a denial of justice but contradicted the report on file and firmly established that clear and convincing evidence was not available to support the burden on the petitioner. Thomas should win his case on the merits and not on a technicality.