162 Wis.2d 320 (1991)
469 N.W.2d 836
IN the MATTER OF the CONDITION OF S.Y., Alleged to be Mentally Ill: S.Y., Appellant-Petitioner,
v.
EAU CLAIRE COUNTY, Respondent.
No. 90-0074-FT.
Supreme Court of Wisconsin.
Submitted on briefs February 27, 1991.
Decided June 6, 1991.
*322 For the appellant-petitioner the cause was submitted on the briefs of Charles Bennett Vetzner, assistant state public defender.
For the respondent the cause was submitted on the brief of Keith R. Zehms, corporation counsel and Anne E. Brown, assistant corporation counsel, Eau Claire.
*323 HEFFERNAN, CHIEF JUSTICE.
This case is before us on a petition to review the decision of the court of appeals,[1] which affirmed the judgment of the circuit court for Eau Claire county, Gregory A. Peterson, Judge, that S.Y. was mentally ill and, because of dangerousness, was subject to a one-year extension of his prior six-month commitment. We affirm the decision of the court of appeals.
This case comes to us in a peculiar factual posture. S.Y. at trial, at his own request, was allowed to waive counsel who would otherwise be provided him pursuant to sec. 51.20(3), Stats.[2] After the jury found him mentally ill and dangerous, he changed his mind and argued on appeal that the furnishing of adversary counsel under sec. 51.20(3) was mandatory and, accordingly, no waiver was permissiblethat he should have had counsel in the circuit court and, because of lack of counsel, a reversal and remand was required.
The court of appeals examined the provision of the Wisconsin Constitution that provides:
Art. I, sec. 21(2), Rights of suitors. In any court of this state, any suitor may prosecute or defend his suit either in his own proper person or by an attorney of the suitor's choice.
Examining this constitutional provision in conjunction with apparently peremptory provisions of the statute *324 requiring adversary counsel, the court of appeals considered it to be its duty to sustain, if possible, the constitutionality of the statute. It did so by construing sec. 51.20(3), Stats., as directory only. Thus, it concluded that a person subject to ch. 51, in the circumstances of S.Y., could waive counsel and proceed pro se. The court of appeals then examined the record and concluded that, under the standards of Pickens v. State, 96 Wis. 2d 549, 292 N.W.2d 601 (1980), there had been a "knowing, intelligent and voluntary" waiver of counsel, and a finding that S.Y. was competent to proceed pro se to trial.
It also held that the admission of certain evidence that was arguably hearsay was, in any event, harmless error. The court of appeals, accordingly, affirmed the trial court's judgment of a one-year commitment that had been entered subsequent to S.Y.'s pro se representation.
Review was taken to this court by S.Y., who was represented by the public defender, who had also represented S.Y. on appeal.
We first address the factual posture as developed in the trial court. It appears that S.Y. was originally committed for mental illness to the Eau Claire County Department of Human Services for a six-month period commencing on April 5, 1989.[3] On September 7, 1989, *325 Eau Claire county petitioned the circuit court for the recommitment of S.Y. for a period not to exceed one year.
*326 The record reveals that Eau Claire county's "Application for Extension of Commitment" for a recommitment of not to exceed one year was personally served on S.Y. on September 20, 1989. S.Y. demanded a six-person jury pursuant to sec. 51.20(11), Stats.
On September 26, 1989, S.Y. appeared at a pretrial conference and, after an extensive colloquy, was authorized by the circuit judge to represent himself at the hearing on the merits, which was held on October 4, 1989. Prior to the pretrial hearing on September 26, three separate counsel had been assigned to represent S.Y. He had discharged two of them prior to the pretrial, and the third was dismissed by S.Y. during the course of the pretrial conference.
At the pretrial, S.Y. stated that all the public defenders did was to play "footsite" with the district attorney.[4] He told Judge Peterson that he had a lawyer *327 at his original commitment, that he understood his own case, and that he knew that the state had the burden of proof both as to mental illness and dangerousness. The judge questioned S.Y. and determined that S.Y. had two years of college, that he had been employed in the hotel business, and that he was thirty-three years old. The colloquy demonstrated good expressive language and sophisticated communication skills.
The representative of the public defender's office was also present and stated that, although the policy of the office was to deny representation if there were two rejections by the proposed client, they would in this case offer still another public defender to represent S.Y. The judge asked S.Y. whether he wished to have the public defender, the third one, who was present at the pretrial, defend him. S.Y. responded, "No way."[5]
After a further interchange with S.Y., including a discussion whether S.Y. wished to have a Mr. Oesterreicher represent him, S.Y. stated, "No. I'll handle it myself. I'll represent myself." He also stated that he was continuing to reject the first public defender appointed because "he was very negative." The court then made the specific findings:
It appears to me that for purposes of determining whether or not you want to have an attorney represent you that you are competent to make the decision you've made. And I will permit you to represent yourself.
S.Y. thanked the judge for permitting him to proceed pro se, and the judge told S.Y. that he would be held to "the same rules" that would be applicable to the prosecutor *328 or any lawyer who might be representing S.Y. S.Y. agreed to those conditions.
Accordingly, S.Y. was permitted to represent himself at the hearing. The quality of his self-representation at the hearing has not been questioned. S.Y.'s public defender counsel on this review asserts, "Petitioner not only conducted himself properly, but seemingly presented his defense with the skill rivaling that of an experienced and zealous advocate."
Thus, there is no assertion of inadequate representation, but only the assertion of a legal proposition that, under sec. 51.20(3), Stats., "the court shall assure that the subject individual is represented by adversary counsel," and, accordingly, there can be no waiver of the right to counsel. S.Y. on this review also asserts that, even if waiver were permitted, the inquiry and procedure used was inadequate to determine whether S.Y. was competent to make that decision and, if he were, whether the standards of Pickens v. State, 96 Wis. 2d 549, 292 N.W.2d 601 (1980), were properly applied.
[1]
We first address the legal proposition advanced by S.Y. that there is no right to self-representation in a mental commitment proceeding. We conclude that right is guaranteed by the constitution of the State of Wisconsin.
Art. I, sec. 21(2), Wis. Const., provides:
In any court of this state, any suitor may prosecute or defend his suit either in his own proper person or by an attorney of the suitor's choice.
The court of appeals correctly concluded, relying on Black's Law Dictionary, that S.Y. was a "suitor," because S.Y. was a party to the suit brought by the county and any party to a suit is, under that definition, a *329 suitor. Bouvier's Law Dictionary (unabridged), Rawle's third revision, p. 3181, West's 1914, defines "suitor" as "[o]ne who is a party to an action"; "one who was bound to attend . . . court." The meaning of the words is not wholly without doubt, when it is considered in isolation; however, a reading of the entire sec. 21(2), which includes the words, "or defend," leaves no doubt that the right of representation by self or attorney is equally applicable to a plaintiff or a defendant. Indeed, it would be fatuous to have a constitutional provision that would allow pro se representation to plaintiffs but not defendants. We conclude that "suitor" is not a word that limits the protections of the constitution to only plaintiffs.
S.Y.'s counsel makes the completely unsupported assertion that the constitutional provision in respect to self-representation applies only to "proper persons." This is a misreading of the constitutional provision, for it refers not to proper persons, but states a suitor may prosecute or defend "in his own proper person." "Proper person," S.Y.'s brief asserts, means a person of "full age and sound mind." No authority is cited for this assertion, and we have been unable, despite research, to find any justification for this interpretation. On the contrary, "proper person" is defined in the Oxford's English Dictionary, Vol. 7, p. 725, in a manner completely consistent with the position of Eau Claire county as:
10. In one's (own) person, formerly also in one's proper person =L. in propria persona: a.= in person Obs. b. In one's own character (not as representing another). [Emphasis added.]
Thus, "in proper person" merely means that an individual may prosecute or defend personally representing himself or herself and no one else. If it is a limitation *330 at all, it only limits one not a lawyer from representing others.
The statement of the public defender that proper person refers to soundness of mind is tailored to fit the needs of the case.
Article I, sec. 21(2), Wis. Const., affords the right of any person to self-representation, as well as the right to be represented by an attorney. This, of course, does not determine whether it was appropriate in the instant case to permit S.Y. to proceed in proper person.
It is argued, however, that the statute mandatorily requires the appointment of "adversary counsel." Thus, it is argued that, if the constitutional provision gives S.Y. the right to self-representation, the statute is unconstitutional. We think that a court is not confined to the conclusion that the statute is unconstitutional or to the alternative selected by the court of appeals, that the statute must be construed as directory only. The court of appeals stated that it was its duty to save the constitutionality of the statute if at all possible. In making the appropriate assumption that the legislature did not intend to enact an unconstitutional statute, the court of appeals reasoned that the statute could be construed as directory only. We have no occasion to dispute that premise. We conclude, however, that the statute simultaneously may be followed literally and constitutionally.
The statute provides that "the court shall assure that the subject individual is represented by adversary counsel." Does this necessarily mean that one who is properly designated or permitted to proceed in proper person cannot represent himself or herself in a manner that is adversary to the petitioners in a mental commitment hearing? Clearly not. To ask the question in the form posed by the public defender begs it. It assumes *331 that only a separate counsel can be adversary. That assumption erroneously defies the entire ratio decedendi of allowing self-representation, i.e., that a person who represents himself cannot be adverse to the other side of the lawsuit in the same manner as could be separate counsel. Random House Dictionary of the English Language, p. 29, defines "adversary" as is pertinent to its use in the statute as "plaintiff and defendant in a legal proceeding: an adversary trial," "an opponent" or "contestant."
[2]
It cannot be doubted that one is allowed to proceed pro se only on the explicit assumption that he or she will be a contestant on his own behalf. The provision of sec. 51.20(3), Stats., referring to counsel, is not to be necessarily equated with the word, "attorney," as used in the constitution. "Attorney," by definition, refers to representation of another. "Counsel," in the sense used in sec. 51.20(3), does not mean that representation shall be by one who is a member of the bar and authorized by law to represent others. Counsel is merely "the advocate . . . engaged in the direction of a cause in court." Random House Dictionary, id. at 460. An "attorney" is always an "agent" of another, "one who is turned to." Id. at 134. Adversary counsel need not be a separate person. The court of appeals correctly concluded that the purpose of the statute is to assure representation for one who is subject to involuntary commitment. Self-representation is clearly embraced within that purpose.
Thus, while we agree with the court of appeals that the statute is not repugnant to the constitution, we do so on the ground that it is appropriately susceptible to the literal reading that a party, after having received the imprimatur of the court under Pickens standards, proceeding in proper person is an adversary counsel engaged *332 in self-representation.[6]
[3]
We accordingly conclude that a person such as S.Y. has the constitutional right to waive representation by an attorney and to proceed in proper person. This, of course, does not mean that a court is required in all instances to permit a suitor who has made a clear election to proceed pro se to do so without providing, if it appears appropriate, standby counsel to assist if the pro se litigant becomes overwhelmed with difficulties. Contempt *333 in State v. Lehman, 137 Wis. 2d 65, 76, 403 N.W.2d 438 (1987).
The remaining question is whether there was a proper waiver of the right to separate counsel. Our statute, which provides that a person subject to commitment proceedings is entitled to counsel is based on Lessard v. Schmidt, 349 F. Supp. 1078, 1098 (E.D. Wis. 1972):
We therefore hold that an individual sought to be detained on grounds of mental illness has the right to counsel, including appointed counsel if the individual states that he is unable to afford counsel.
[4]
However, federal cases have made it equally clear that, in mental commitment proceedings, the right to counsel could be waived. See Heryford v. Parker, 396 F.2d 393 (10th cir. 1968), wherein Chief Judge Murrah analogized the need for counsel to the holding of the right to counsel for juveniles decided in In re Gault, 387 U.S. 1 (1967). Judge Murrah stated that, whether the subject matter was mental instability or juvenile delinquency, an individual should have the right to counsel unless, in respect to mental commitments, effectively waived. Heryford at 396. Hence, as a matter of federal law as well as of state law, there may be a waiver of counsel in a mental commitment proceeding.
[5]
For there to be an effective waiver of a right, there must be competence to make the choice not to be represented by counsel. There undoubtedly is a logical tension between a finding of competence to make that decision and the ultimate finding of the very proceeding in which the defendant goes it alone when the final decision of the jury is mental illness, as was the result of the trial in respect to S.Y.
*334 However, the statutes specifically provide that there is no presumption or any inference of incompetency by reason of being subject to a proceeding under ch. 51. Section 51.59(1), Stats., provides:
Incompetency not implied. (1) No person is deemed incompetent to manage his or her affairs, to contract, to hold professional, occupational or motor vehicle operator's licenses, to marry or to obtain a divorce, to vote, to make a will or to exercise any other civil right solely by reason of his or her admission to a facility in accordance with this chapter or detention or commitment under this chapter.
Also, the first Lessard case provided, n.33, p. 1101, "The presumption in a civil commitment proceeding must be that the individual is indeed competent." And, of course, the burden is on the state to convince the trier of fact that the subject is mentally ill and dangerous. This burden must be by clear and convincing evidence. Hence, at the time S.Y. was being held for recommitment, he was, in the eyes of the law, legally competent, i.e., he was to be judged in an appropriate proceeding where the waiver of retained counsel and the question of proceeding pro se is considered by the same standards as anyone else who seeks to waive the right to counsel.
Under the facts set forth above, we conclude that there was an appropriate determination by the trial judge to accept S.Y.'s waiver of counsel. The public defender acknowledges that the standards of Pickens, 96 Wis. 2d 549, 292 N.W.2d 601 (1980), are appropriate for allowing a waiver of counsel under ch. 51, if waiver is permitted. He bases his assertion that waiver is not permitted on the constant reassertion that S.Y. cannot be a "proper person" and, hence, has no right of self-representation that is afforded by Art. I, sec. 21(2), Wis. Const. We believe we have effectively disproved this *335 contention. The public defender also asserts that the reason given for not wanting a public defender, i.e., that they play "footsie" with the district attorney, is a manifestation of paranoia, which was confirmed by witnesses in this very proceeding. However, counsel for S.Y. in this proceeding cannot so bolster his case by relying on subsequent events or by relying on a prior finding of mental illness when the subject is presumptively competent by statute prior to and at the hearing.
Thus, the Pickens standards are appropriate here even where the subject has been found, six months earlier, to be mentally ill and where he subsequently is found to be mentally ill at the conclusion of the trial.
Because the defendant is deemed not incompetent under the strictures of the statute, the real inquiry is whether there was a sufficient showing of a genuine waiver, i.e., first, the deliberate choice to proceed without counsel and, second, the subjective awareness of the risks and hazards of proceeding to trial without counsel.
Despite some arguments to the contrary,[7] it is clear that there was a knowing and voluntary relinquishment of the right to counsel. S.Y. stated that he understood his own problem, and he stated it correctly. He told Judge Peterson that he had a lawyer at the earlier proceeding and that lawyer was not helpful. He specifically discharged three lawyers who had been provided for him and reiterated his decision to go without any appointed counsel under the standards of Pickens, of which he *336 showed familiarity. S.Y. knowingly and voluntarily elected to waive counsel. While there are vehement arguments to the contrary, they are based ultimately upon the faulty assumption that waiver is legally impossible under the circumstances here.
[6]
Nevertheless, even given the right to waive counsel, it is within the prerogative of the judge to determine whether the defendant can represent himself pro se. We conclude, as did the court of appeals, that the trial judge made the appropriate inquiries and the appropriate decision.
The court of appeals relied upon Pickens v. State, 96 Wis. 2d 549 at 563-64:
[I]n order for an accused's waiver of his right to counsel to be valid, the record must reflect not only his deliberate choice to proceed without counsel, but also his awareness of the difficulties and disadvantages of self-representation, the seriousness of the charge or charges he is facing and the general range of possible penalties that may be imposed if he is found guilty. Unless the record reveals the defendant's deliberate choice and his awareness of these facts, a knowing and voluntary waiver will not be found.
S.Y., 156 Wis. 2d at 322.
Pickens also sets a standard for determining whether a defendant is competent to proceed to represent himself at trial:
When a defendant expresses a desire to proceed pro se, the trial court should examine him on the record to determine not only whether his waiver of counsel is knowing and voluntary, but also to determine whether he possesses the minimal competence necessary to conduct his own defense. Factors to consider in making this second determination include *337 the defendant's education, literacy, fluency in English, and any physical or psychological disability which may significantly affect his ability to communicate a possible defense to the jury. However, since Faretta indicates that persons of average ability and intelligence are entitled to represent themselves, a timely and proper request should be denied only where a specific problem or disability can be identified which may prevent a meaningful defense from being offered, should one exist.
Pickens, 96 Wis. 2d at 568-69.
In the instant case the trial court elicited facts and responses that made it clear that the defendant was well educated, literate, fluent in English, and had no trouble whatsoever in communicating his ideas. There was no evidence of any problem or disability that would impair S.Y.'s ability to defend himself. S.Y. demonstrated not only the will to represent himself, but also demonstrated that he was competent to proceed pro se.[8]
[7]
Brown v. State, 24 Wis. 2d 491, 129 N.W.2d 175, 131 N.W.2d 169 (1964), points out that the determination of an intelligent waiver of counsel and of the ability of a defendant to proceed pro se is a matter of lawa constitutional fact that an appellate court can determine independently, although such court is required to give careful consideration to the determination of the trial court. We determine, taking into consideration the procedures and rationale of the trial judge, that, as a matter of law, there was a knowing and intelligent waiver of counsel and a proper determination that S.Y. was comptent *338 to proceed pro se. While this determination is not to be judged after the fact, we point out again that the self-representation was apparently carried out with near professional skill.
One of those professional skills was demonstrated when S.Y. objected to hearsay testimony of an examining physician that tended to prove that S.Y. was dangerous to others. While the exact nature of the underlying conduct is not readily apparent, the physician, who was not a witness to the event, testified that S.Y. had committed an unprovoked assault on a female undergraduate student. S.Y.'s prompt and well stated objection on the basis of hearsay was, however, overruled by the trial court.
[8]
The court of appeals concluded that the statement was hearsay and inadmissible. It held, nevertheless, that the error was harmless in light of the plethora of other evidence that convincingly demonstrated that S.Y. was dangerous to himself as well as to others. To decide this case, we need not determine that that admission of the examining physician's testimony was inadmissible. Its thrust was that S.Y. was dangerous and, hence, an appropriate subject for commitment. All of the witnesses testified to this same effect. There was evidence that S.Y. brought a knife and a razor into a controlled environment; that he was generally in a state of agitation; that he was an alcoholic, mentally ill, with substantial paranoia, and had other severe thought disorders. There was testimony that he was angry and threatening, and testimony that he had stated his intentions to kill himself. S.Y. himself testified about an incident which was described by others as an attempt to hang himself. In the general assessment of the testimony, the incident described by the examining physician weighs but little. *339 If its admission were error, it was harmless.[9] The contribution to the final result was at worst de minimis.
We conclude therefore that S.Y. had the constitutional right to represent himself as a defendant in this commitment procedure. He knowingly and competently waived his right to counsel, and he was competent to proceed pro se with his own defense. We conclude that the trial judge, applying the standards of Pickens, found him competent in both respects; and, on the basis of the record, we independently so hold as a matter of law.
By the Court.Decision affirmed.
NOTES
[1] In the Matter of the Condition of S.Y., Alleged to be Mentally Ill: S.Y., v. Eau Claire County, 156 Wis. 2d 317, 457 N.W.2d 326 (Ct App. 1990).
[2] Section 51.20(3), Stats., provides:

Legal Counsel. At the time of the filing of the petition the court shall assure that the subject individual is represented by adversary counsel. If the individual claims or appears to be indigent, the court shall refer the person to the authority for indigency determinations specified under s. 977.07(1).
[3] Section 51.20(13)(g), Stats., provides:

(g) 1. Except as provided in subd. 2, the first order of commitment of a subject individual under this section may be for a period not to exceed 6 months, and all subsequent consecutive orders of commitment of the individual may be for a period not to exceed one year.
2. Any commitment ordered under par. (a) 3 to 5, following proof of the allegations under sub. (1)(a) 2. d, may not continue longer than 45 days in any 365-day period.
2g. The total period a person may be committed pursuant to commitments ordered under par. (a) 4 or 4m, following proof of the allegations under sub. (1)(ar) or (av), may not exceed 180 days in any 365-day period.
2m. In addition to the provisions under subds. 1, 2 and 2g, no commitment ordered under par. (a)4 or 4m may continue beyond the inmate's date of release as determined under s. 302.11.
2r. Twenty-one days prior to expiration of the period of commitment under subd. 1, 2, 2g or 2m, the department, if the individual is committed to the department, or the county department to which an individual is committed shall file an evaluation of the individual and the recommendation of the department or county department regarding the individual's recommitment with the committing court and provide a copy of the evaluation and recommendation to the individual's counsel and the counsel designated under sub. (4). If the date for filing an evaluation and recommendation under this subdivision falls on a Saturday, Sunday or legal holiday, the date which is not a Saturday, Sunday or legal holiday and which most closely precedes the evaluation and recommendation filing date shall be the filing date. A failure of the department or the county department to which an individual is committed to file an evaluation and recommendation under this subdivision does not affect the jurisdiction of the court over a petition for recommitment.
3. The county department under s. 51.42 or 51.437 to whom the individual is committed under par. (a) 3 may discharge the individual at any time, and shall place a committed individual in accordance with par. (f). Upon application for extension of a commitment by the department or the county department having custody of the subject, the court shall proceed under subs. (10) to (13). If the court determines that the individual is a proper subject for commitment as prescribed in sub. (1)(a) 1 and evidences the conditions under sub. (1)(a) 2 or (am) or is a proper subject for commitment as prescribed in sub. (1)(ar) or (av), it shall order judgment to that effect and continue the commitment. The burden of proof is upon the county department or other person seeking commitment to establish evidence that the subject individual is in need of continued commitment.
(h) Any disposition of a minor under this subsection may extend beyond the age of majority of the individual, if the disposition is otherwise made in accordance with this section.
[4] On this appeal the public defender places emphasis on the statement of S.Y. at the pretrial conference, "and my father has frozen my assets to hire [a] private attorney." The public defender attempts to turn this statement into an assertion that there was an improper determination of indigencyor at least that it is indicative of S.Y.'s preference to have hired his own attorney. However, there is not an iota of evidence that indigency was improperly determined or that some further inquiry should have been made to discover whether or not the public defender's determination of indigency was inadequate. Under sec. 51.20(3), Stats., indigency is to be determined under sec. 977.07(1). That determination was ordered by Judge Peterson. Unless the public defender is now asserting that the public defender's determination of indigency is unreliable, there is no reason to question the indigency of S.Y. If there were assets that would have permitted the hiring of private counsel, we believe that the public defender's office would have so determined and refused representation for that reason. The claim that S.Y. was not indigent is wholly without support in the record.
[5] The record indicates that at least one court-appointed counsel who was dismissed by S.Y. was not a public defender, but a private attorney who was hired on a contract basis.
[6] S.Y.'s counsel attempts to analogize the status of one in S.Y.'s situation to that of a child under 15. There is some superficial juridical similarity. However, it should be noted that a child under 15 under the provisions of ch. 48 is conclusively presumed to be unable to waive representation. See sec. 48.23(1), Stats. And a child as defined in ch. 48 who is subject to the commitment procedures of ch. 51, irrespective of age (i.e., below 18) cannot waive representation. See sec. 48.23(1)(b), 2(c). This is very different from the provisions of sec. 51.20(3), which imposes the duty on a judge to assure that the subject is represented, but also significantly omits the language found in ch. 48 that prohibits any waiver of counsel in respect to children subject to the same procedures. If any rationale is appropriately derived from these statutes, it would appear that the legislature, by prohibiting waiver in respect to children and not prohibiting it in respect to adults subject to the same procedure, evidences an intent not to fore-close the opportunity of adults to waive separate representation. Counsel for S.Y. correctly states, "Plainly the legislature was aware that a provision for adversary counsel could be made mandatory or subject to waiver." The fact is, however, that there is no specific legislative directive in respect to adults that prohibits waiver. There is in respect to children. We, of course, in this proceeding do not address the constitutional right, if any there be, for children to proceed pro se in actions or proceedings which might affect them.
[7] As pointed out above, counsel now asserts that perhaps S.Y. did not really want to waive counsel, that he was merely saying that he wanted to be represented by retained counsel at his own expense, i.e., his assets had been frozen. But as explained above, there was a specific finding of indigency. Hence, it is sheer confabulation to assert that S.Y. wanted the release of his own assets and the right to retain counsel at his own expense.
[8] Part of the testimony later elicited was to the effect that S.Y. had periods of absolute lucidity and control. The pretrial hearing and the trial itself apparently were instances of the periods of complete control.
[9] There is also evidence that S.Y. had "opened the door" to this testimony by referring to it during the cross-examination of another physician. Thus, the hearsay objection may well have been waived.