**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 29, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP48**

Cir. Ct. No. **2017ME201**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

IN THE MATTER OF THE MENTAL COMMITMENT OF N.W.

DANE COUNTY,

    PETITIONER-RESPONDENT,

  V.

N. W.,

    RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Dane County: WILLIAM E. HANRAHAN, Judge. *Affirmed*.

¶1 FITZPATRICK, J.[1] N.W. appeals an order of the Dane County Circuit Court extending his involuntary commitment for mental health treatment

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

under WIS. STAT. § 51.20, and an order denying his postdisposition motion to vacate that extension. N.W. entered into a written stipulation to the extension of his involuntary commitment. N.W. now contends on appeal that, before the circuit court accepted N.W.'s stipulation, the court was required to conduct a personal colloquy with him to ensure that he knowingly, intelligently, and voluntarily agreed to the extension. N.W. asserts that, because the court did not conduct such a colloquy, the court's acceptance of the stipulation and the entry of the order extending his commitment violated his constitutional right to due process. I conclude the circuit court was not required to conduct a personal colloquy with N.W. before accepting his stipulation and affirm the orders of the circuit court.

## BACKGROUND

¶2    The following facts are not in dispute.

¶3    In June 2017, the circuit court entered an order involuntarily committing N.W. for a period of six months. In November 2017, Dane County filed a petition to extend N.W.'s involuntary commitment, and a hearing was held on the County's petition. At that hearing, counsel for the County informed the court that N.W. had "related to [the County] that he does believe … that the extension of his commitment is okay," and that N.W. was stipulating to a twelve-month extension of his commitment on an outpatient basis. N.W.'s attorney informed the court that N.W. agreed to the extension of his commitment, and that N.W. had signed a Waiver of Recommitment Trial on Extension of Commitment form. The waiver stated: "I hereby waive my right to appear and to a trial on the extension of my Order of Commitment." On the waiver, N.W. initialed next to each of the following provisions setting forth the rights N.W. was giving up by waiving his right to appear and to a trial:

> [T]he right to select one … court-appointed doctor[], and to request the court appoint an additional examiner to examine [N.W.] and submit a report to the court;
>
> [T]he right to have [N.W.'s] attorney cross-examine the County's witnesses;
>
> [T]he right to attend the trial, remain silent, and/or the right to testify and present evidence at trial;
>
> [T]he right to use subpoenas to require witnesses to come to court to testify on [N.W.'s] behalf;
>
> [T]he right to make Dane County prove, by clear and convincing evidence, that 1) [N.W.] [has] a mental illness; 2) the mental illness is treatable; 3) if treatment were withdrawn, there is a substantial likelihood that [N.W.] would again become a proper subject for commitment and; 4) [N.W.] can be given medication and treatment regardless of [N.W.'s] consent.

N.W. signed below the following statement:

> I have reviewed and understand this entire document, the proposed orders, and treatment conditions.  I am asking the court to accept this waiver and waive my appearance at any court proceeding in this case.  **In doing so, I understand that the court will order that my commitment be extended for 12 months on an outpatient basis with treatment conditions.  I further understand that the court may order me to take medication regardless of my consent.**

N.W.'s attorney signed below the following statement:  "I am the attorney for the subject.  I have discussed this document and any attachments with the subject.  I believe the subject understands it, and is making this waiver freely and voluntarily."  The signed waiver was submitted to the court.  The court accepted N.W.'s written stipulation, and the court entered the order extending N.W.'s commitment for twelve months.

¶4      N.W. filed a postdisposition motion seeking to vacate the December 2017 order extending his involuntary commitment.  N.W. argued that his due

process rights were violated because the circuit court did not conduct a personal colloquy to ascertain that his written stipulation to the extension of his commitment was knowing, intelligent, and voluntary before accepting the stipulation. The circuit court denied N.W.'s motion. N.W. appeals.

## DISCUSSION

¶5     Persons subject to commitments under WIS. STAT. § 51.20 are entitled to certain due process protections. *See State v. Lee*, 115 Wis. 2d 615, 621, 340 N.W.2d 568 (Ct. App. 1983). The nature and extent of those protections is a question of law that this court decides de novo. *See Monroe Cty. DHS v. Kelli B.*, 2004 WI 48, ¶16, 271 Wis. 2d 51, 678 N.W.2d 831 (whether a challenged state action violates due process protections presents a legal question that appellate courts review independently of the circuit court).

¶6     For context, I observe that N.W. does not contend that his stipulation to the extension of his commitment was, in fact, anything other than knowing, intelligent, and voluntary. N.W. argues that a personal colloquy is always required in these circumstances.

¶7     N.W.'s argument starts with the following premise. Criminal defendants, and parents whose parental rights the state seeks to terminate, have a due process right to have the circuit court, prior to accepting a guilty plea in a criminal proceeding or an admission in a parental rights termination proceeding, engage in a personal colloquy with the defendant or parent to ascertain that the defendant or parent is entering the plea or making the admission knowingly, intelligently, and voluntarily. *See* WIS. STAT. §§ 48.422(7) and 971.08(1); *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986). From that premise, N.W. argues that due process required the circuit court to conduct a similar colloquy

with him before the court accepted his stipulation to the extension of his involuntary commitment under WIS. STAT. § 51.20. However, N.W.'s argument equating procedures required in criminal and termination of parental rights cases with WIS. STAT. ch. 51 cases fails because it ignores the significant material differences between ch. 51 involuntary commitments and criminal prosecutions and actions to terminate parental rights.

¶8 First, as noted, in criminal prosecutions and proceedings to terminate parental rights, a personal colloquy is mandated by statute. *See* WIS. STAT. §§ 48.422(7) and 971.08(1). The legislature has set forth the due process requirements for involuntary commitment proceedings in WIS. STAT. § 51.20(5), (10)-(13). Section 51.20(5)(a) provides:

> The hearings which are required to be held under this chapter shall conform to the essentials of due process and fair treatment including the right to an open hearing, the right to request a closed hearing, the right to counsel, the right to present and cross-examine witnesses, the right to remain silent and the right to a jury trial if requested under sub. (11).

N.W. concedes that absent from these subsections is a requirement that the circuit court conduct a personal colloquy with the person seeking to stipulate to the extension of his or her commitment before accepting that stipulation. Therefore, N.W. fails to draw statutory parallels between § 51.20 proceedings and the due process requirements for criminal case pleas and admissions in termination of parental rights cases.[2]

---

[2] WISCONSIN STAT. § 51.20(8)(bg) is not cited by either party but likely has relevance to this discussion. That section states in pertinent part:

(continued)

5

¶9   Second, the purpose of a WIS. STAT. ch. 51 proceeding is not punitive but, rather, is intended to provide an individual with treatment and services that, consistent with his or her needs, will restore his or her mental health in "the least restrictive" manner. WIS. STAT. § 51.20(13)(c)2. WISCONSIN STAT. § 51.001(1) states the "Legislative Policy" underlying ch. 51. It states:

> It is the policy of the state to assure the provision of a full range of treatment and rehabilitation services in the state for all mental disorders and developmental disabilities and for mental illness, alcoholism and other drug abuse. There shall be a unified system of prevention of such conditions and provision of services which will assure all people in need of care access to the least restrictive treatment alternative appropriate to their needs, and movement through all treatment components to assure continuity of care, within the limits of available state and federal funds and of county funds required to be appropriated to match state funds.

See also **Outagamie Cty. v. Michael H.**, 2014 WI 127, ¶35, 359 Wis. 2d 272, 856 N.W.2d 603 ("As the County correctly points out, one of the purposes of [ch.] 51 is to facilitate treatment for the dangerous mentally ill who will benefit from it.").

---

> The subject individual, or the individual's legal counsel with the individual's consent, may waive the time periods under [WIS. STAT. §] 51.10 or this section for the probable cause hearing or the final hearing, or both, for a period not to exceed 90 days from the date of the waiver, if the individual and the counsel designated under sub. (4) agree at any time after the commencement of the proceedings that the individual shall obtain treatment under a settlement agreement. The settlement agreement shall be in writing, shall be approved by the court and shall include a treatment plan that provides for treatment in the least restrictive manner consistent with the needs of the subject individual.

From that language, I discern that the "settlement agreement" mentioned in that portion of the statute need only be in writing and there is no requirement that a personal colloquy between the circuit court and the "individual" is needed to approve the settlement agreement. This section undercuts N.W.'s personal colloquy argument.

In addition, the United States Supreme Court has held that, because a commitment similar to that described in ch. 51 is "not exercised in a punitive sense," it "can in no sense be equated to a criminal prosecution." *Addington v. Texas*, 441 U.S. 418, 428 (1979). In light of those authorities, I reject N.W.'s attempt to draw criminal case procedures into ch. 51 proceedings when the legislature has rejected those procedures.

¶10 There is a third reason N.W.'s argument fails. Proceedings under WIS. STAT. ch. 51 are civil in nature and are subject to the rules of civil procedure. *See Waukesha Cty. v. S.L.L.*, 2019 WI 66, ¶27, 387 Wis. 2d 333, 929 N.W.2d 140 ("§ 51.20(10)(c) incorporates the rules of civil procedure to the extent they do not conflict with [ch.] 51"). As pointed out by the County, ch. 51 does not set forth a specific procedure for stipulations. So a part of the rules of civil procedure, WIS. STAT. § 807.05,[3] governs. And, § 807.05 does not contain a requirement that the court conduct a personal colloquy with a party entering into a stipulation to determine that the party is doing so knowingly, intelligently, and voluntarily.

¶11 Finally, N.W. argues that a personal colloquy is necessary because, without the colloquy, there is no assurance that the person knowingly, intelligently, and voluntarily stipulated to the extension of his or her involuntary commitment. However, persons subject to involuntary commitment proceedings

---

[3] WISCONSIN STAT. § 807.05 provides:

> No agreement, stipulation, or consent between the parties or their attorneys, in respect to the proceedings in an action or special proceeding shall be binding unless made in court or during a proceeding under [WIS. STAT. §§] 807.13 or 967.08 and entered in the minutes or recorded by the reporter, or made in writing and subscribed by the party to be bound thereby or the party's attorney.

7

under WIS. STAT. ch. 51 are statutorily presumed to be competent, including competent to manage their own affairs and enter into contracts. WISCONSIN STAT. § 51.59(1) ("No person is deemed incompetent to manage his or her affairs, to contract, to hold professional, occupational or motor vehicle operator's licenses, to marry or to obtain a divorce, to vote, to make a will or to exercise any other civil right solely by reason of his or her … commitment under this chapter."); ***S.Y. v. Eau Claire Cty.***, 162 Wis. 2d 320, 334, 469 N.W.2d 836 (1991). Requiring a court to decide whether an individual is knowingly and intelligently able to stipulate to one or more issues in a ch. 51 proceeding is directly contrary to that legislative presumption of competence. Accordingly, I reject this argument as well.

¶12     In sum, N.W. has not presented any authorities which lead to the conclusion that due process requires that a circuit court conduct a personal colloquy with a person seeking to stipulate to the extension of his or her involuntary commitment under WIS. STAT. ch. 51 to determine that the person is doing so knowingly, intelligently, and voluntarily before accepting that stipulation.

**CONCLUSION**

¶13     For the foregoing reasons, the orders of the circuit court are affirmed.

> *By the Court.*—Orders affirmed.

> This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

8