2004 ND 43

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Anthony OCHOA, Defendant and Appellant.**

**Nos. 20030132, 20030133.**

Supreme Court of North Dakota.

Feb. 25, 2004.

Rehearing Denied March 23, 2004.

Phyllis A. Ratcliffe, Cooperstown, N.D., for defendant and appellant.

H. Jean Delaney, Assistant State's Attorney, Valley City, N.D., for plaintiff and appellee.

NEUMANN, Justice.

[¶ 1] Anthony Ochoa appeals from the criminal judgment for possession of drug paraphernalia, in violation of N.D.C.C. § 19–03.4–03, and possession of a controlled substance with intent to deliver, in violation of N.D.C.C. § 19–03.1–23(1)(a). Ochoa argues the magistrate erred in issuing the search warrant, claiming probable cause was improperly based on an unreliable informant; he was not afforded the opportunity to assist in his own defense; and he was denied his right to a speedy trial. We affirm.

I

[¶ 2] In July 2002, Sheree Rose began working as an informant for Deputy Mark Hendrickson, a deputy sheriff for Barnes County. Deputy Hendrickson is a narcotics investigator, assigned to the drug task force for the areas of Barnes County and Stutsman County. On July 23, 2002, Rose informed Deputy Hendrickson that she and Ochoa were renting a vehicle in Fargo, North Dakota, and traveling to California to buy methamphetamine. Deputy Hendrickson informed Rose he was not authorizing the trip. Rose continuously contacted Deputy Hendrickson while in California, reporting Ochoa had picked up a package containing two ounces of methamphetamine and placed it in the trunk of the rental car. Rose repeatedly contacted Deputy Hendrickson throughout the trip and informed him of the parties' whereabouts during their return to North Dakota. Rose informed Deputy Hendrickson of the vehicle's license plate number, make of the vehicle, and the place of rental. Deputy Hendrickson confirmed the vehicle belonged to Hertz Corporation. Rose told Deputy Hendrickson that Ochoa preferred to hide methamphetamine in his shoes. Deputy Hendrickson was aware of Rose's criminal record and knew she was a marijuana and heroine user. Law enforcement paid Rose $300 for her services.

[¶ 3] Based on the information Rose provided, Deputy Hendrickson applied for and was issued a search warrant to stop and search the vehicle. On July 28, 2002, a highway patrolman stopped the rental vehicle in Barnes County, North Dakota. Rose was the driver while Ochoa and a third person were passengers in the vehicle. A search of the vehicle uncovered a syringe and methamphetamine in Ochoa's shoes. Ochoa was charged with possession of drug paraphernalia and possession of a controlled substance with intent to deliver.

Ochoa applied for court-appointed counsel. The trial court granted his application and appointed counsel to represent him on July 31, 2002. Ochoa's attorney moved for a speedy trial on August 28, 2002. Ochoa's attorney also moved to suppress evidence on November 14, 2002, and that motion was denied on February 10, 2003. Between July 2002 and January 2003, the trial court issued four appointments of counsel to represent Ochoa. Despite being represented by counsel, Ochoa continuously filed various motions with the court. Phyllis Ratcliffe was appointed to represent Ochoa on January 28, 2003. Ochoa repeatedly requested his trial be set as soon as possible and personally moved for dismissal on March 12, 2003, claiming a violation of his right to a speedy trial. Ochoa also informed the trial court that Ratcliffe would be out of town during his expected two-day trial when it was scheduled for April 16 and 17, 2003. Ochoa offered to proceed on his own, rather than receive a continuance, in the event Ratcliffe was unavailable for his trial. He alternatively requested yet another attorney. The trial was rescheduled to accommodate Ratcliffe's schedule.

[¶ 4] On March 14, 2003, Ratcliffe moved for clarification of her role as Ochoa's attorney. In her supporting brief, Ratcliffe informed the trial court that Ochoa wanted to represent himself in various portions of the trial and would need an attorney to act as "standby counsel." Though Ratcliffe used the phrase "standby counsel," it was clear from the motion that a form of hybrid counsel or co-counsel was being requested. The trial court effectively denied Ratcliffe's motion, stating the relationship between Ratcliffe and Ochoa is the same as any other relationship between counsel and a defendant. The day before trial, Ratcliffe again requested Ochoa be allowed to represent himself during various portions of the trial. The trial

court again denied her request. Ochoa's jury trial began March 31, 2003. The jury returned verdicts of guilty. Ochoa appeals.

## II

[¶ 5] Ochoa argues the magistrate improperly issued the search warrant, contending there was no probable cause because Rose was not sufficiently reliable as an informant. We disagree.

[¶ 6] We review a finding of probable cause under the totality-of-the-circumstances test and consider the sufficiency of information before the magistrate independent of the trial court's decision. *State v. Roth*, 2004 ND 23, ¶ 5, 674 N.W.2d 495. "[P]robable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers ... which is not weighed in individual layers but in the 'laminated' total." *State v. Ballweg*, 2003 ND 153, ¶ 12, 670 N.W.2d 490 (citations omitted). Whether probable cause to issue a search warrant exists is a question of law. *State v. Thieling*, 2000 ND 106, ¶ 8, 611 N.W.2d 861. Questions of law are fully reviewable. *State v. Wanzek*, 1999 ND 163, ¶ 5, 598 N.W.2d 811.

[¶ 7] "The task of the issuing magistrate is to make a practical, common-sense decision whether, given all the information considered together, there is a fair probability contraband or evidence of a crime will be found in a particular place." *Roth*, 2004 ND 23, ¶ 7, 674 N.W.2d 495. This Court generally defers to the magistrate's probable cause determination if a substantial basis exists for the magistrate's conclusion, and we resolve doubtful or marginal cases in favor of the magistrate's determination. *Ballweg*, 2003 ND 153, ¶ 12, 670 N.W.2d 490. We defer to the

trial court's findings of fact, and we resolve any conflicts in testimony in favor of affirmance. *State v. Haverluk*, 2000 ND 178, ¶ 7, 617 N.W.2d 652.

[¶ 8] Ochoa contends the information Rose provided did not support the magistrate's finding of probable cause because Deputy Hendrickson could not independently verify information about the California trip. According to Ochoa, the information Rose provided linked only Rose to the rental vehicle because she had paid for the rental with her employer's credit card and the vehicle was rented in her name. Ochoa also asserts that, although Deputy Hendrickson stated in the search warrant application that Rose had previously supplied reliable information, he failed to provide any details of this information and Rose was paid $300 for her services in this case.

[¶ 9] Rose is classified as a confidential informant, which is generally defined as an informant "known to the police officer, but his or her identity is concealed from the magistrate." *State v. Roth*, 2004 ND 23, ¶ 11, 674 N.W.2d 495. While confidential informants do not hold the highest degree of presumed reliability, confidential informants do enjoy more reliability than anonymous informants. *See Roth*, at ¶ 11 (explaining the differences among citizen informants, confidential informants, and anonymous informants). We have previously said, " 'the most reliable tip is . . . one relayed personally to the officer.' " *Roth*, at ¶ 11, (quoting *State v. Miller*, 510 N.W.2d 638, 640 (N.D. 1994)). Anonymous informants must supply information that allows one to deduce the information is reliable, and independent investigation may be required when the informant does not supply the information necessary to evaluate the tip. *Roth*, at ¶¶ 12, 13. However, corroboration is not always necessary when a confidential informant is involved. *See Roth*, at ¶ 13.

[¶ 10] Ochoa contends Deputy Hendrickson's testimony when applying for the search warrant regarding Rose's previous relaying of reliable information to him was misleading. Deputy Hendrickson did not previously verify the information Rose gave regarding Ochoa's link to stolen bank portfolios and a drug shipment. Deputy Hendrickson later testified at the suppression hearing that Rose had given previous reliable information to Jamestown law enforcement officers. Although Ochoa did not directly address this issue in his appellate brief, a *Franks* issue is involved when " 'the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause.' " *State v. Schmitt*, 2001 ND 57, ¶ 10, 623 N.W.2d 409 (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). This issue is not properly before us because it was not properly raised before the lower court. *See Owens v. State*, 1998 ND 106, ¶ 50, 578 N.W.2d 542, *cert. denied*, 532 U.S. 1057, 121 S.Ct. 2204, 149 L.Ed.2d 1034 (2001) (stating, "[i]t is well settled an issue not raised in the trial court cannot be raised for the first time on appeal"). Ochoa personally submitted a motion to suppress, asserting Deputy "Hendrickson intentionally or negligently misled the issuing magistrate . . . ." The trial court indicated it would not consider motions Ochoa raised pro se because he was represented by counsel.

[¶ 11] Even if the issue had been properly raised, there would be no violation under *Franks*. Under *Franks*, " '[if] the allegation of perjury or reckless

disregard is established by the defendant ... and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided....'" *State v. Laib*, 2002 ND 95, ¶ 5, 644 N.W.2d 878 (quoting *Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674). Here, Deputy Hendrickson's statement to the magistrate regarding Rose's prior reliability is not necessary to the finding of probable cause for the search warrant. Rose's reliability is sufficiently demonstrated by the facts of this case. We also note Rose's receipt of $300 for her services or the fact that Ochoa alleges she is a known drug user does not necessarily detract from her reliability in this case.

[¶ 12] Rose's reliability is demonstrated by the fact that she provided Deputy Hendrickson with highly specific, detailed information of Ochoa's drug activity. Rose provided Deputy Hendrickson with information of their various locations while traveling, the quantity of methamphetamine Ochoa purchased, and the specific and unusual location of the methamphetamine in Ochoa's shoes. In *Roth*, we upheld a finding of probable cause in part because the confidential informant provided detailed information of his knowledge of the suspect's involvement in drug manufacture. *Roth*, at ¶ 14. Also, we noted in *State v. Holzer*, "[the informant's] level of specificity in describing the drug activity was taking place ... made it more likely that the information provided was accurate." 2003 ND 19, ¶ 14, 656 N.W.2d 686.

[¶ 13] Additionally, Rose's reliability is further bolstered by the information Deputy Hendrickson was able to independently verify. "[W]hen law enforcement officers have verified part of the informant's information by independent investigation, the corroboration lends credence to the remaining unverified information." *State v. Birk*, 484 N.W.2d 834, 837 (N.D.1992). Rose informed Deputy Hendrickson they were traveling in a vehicle rented from a specific rental company in Fargo and gave him the vehicle's license plate number. Deputy Hendrickson was able to confirm this information. Although Ochoa argues this information only links Rose to the vehicle, the information supports Rose's reports of a trip and makes the additional details regarding Ochoa's drug involvement more likely. Under the totality of the circumstances, the verified information and the detailed information established probable cause to search the vehicle by establishing "certain identifiable objects are probably connected with criminal activity and are probably to be found at the present time at an identifiable place." *State v. Ringquist*, 433 N.W.2d 207, 212 (N.D.1988). Under the totality of the circumstances, the magistrate properly relied on the confidential informant's testimony provided by Deputy Hendrickson to conclude probable cause existed to search the vehicle.

### III

[¶ 14] Ochoa argues the trial court committed reversible error in denying his right to self-representation. According to Ochoa, he made it abundantly clear, through many filings with the trial court, that he wanted to participate in his own trial, and the trial court failed to make an inquiry into Ochoa's desire to represent himself.

[¶ 15] Claims of a violation of a constitutional right are reviewed de novo. *State v. Keyes*, 2000 ND 83, ¶ 2, 609 N.W.2d 428. We require reversal of a conviction if a defendant's constitutional right to counsel is violated because prejudice is presumed. *City of Fargo v. Rockwell*, 1999 ND 125, ¶ 7, 597 N.W.2d 406.

Criminal defendants are guaranteed the right to counsel under the Sixth Amendment to the United States Constitution, and article I, section 12 of the North Dakota Constitution. *State v. Dvorak,* 2000 ND 6, ¶ 9, 604 N.W.2d 445. A defendant has a corollary constitutional right to self-representation under the Sixth Amendment to the United States Constitution. *Dvorak,* at ¶ 10 (citing *Faretta v. California,* 422 U.S. 806, 818–21, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). Those rights are mutually exclusive. *Dvorak,* at ¶ 11.

[¶ 16] This Court has held waiver of a constitutional right is only effective if done clearly and intentionally. *State v. Kranz,* 353 N.W.2d 748, 752 (N.D. 1984). Generally, the defendant must make a "knowing, intelligent, voluntary, and unequivocal request before [a court may conclude] he has waived his right to counsel and invoked his right to represent himself." *Hamilton v. Groose,* 28 F.3d 859, 862 (8th Cir.1994), *cert. denied,* 513 U.S. 1085, 115 S.Ct. 741, 130 L.Ed.2d 643 (1995). "Whether there has been an intelligent waiver of constitutional rights, therefore, depends upon the facts and circumstances of each particular case, including the background, the experience, and the conduct of the accused." *State v. Manning,* 134 N.W.2d 91, 97 (N.D.1965).

[¶ 17] We do not always require an unequivocal statement as a waiver of counsel. A "defendant's conduct may be the functional equivalent of a voluntary waiver of the right to counsel." *Dvorak,* 2000 ND 6, ¶ 13, 604 N.W.2d 445. However, determining whether Ochoa's conduct was the "functional equivalent" of a voluntary waiver of counsel is inappropriate in this case. We generally apply the concept of a functional waiver when the trial court has determined a defendant's behavior is tantamount to a voluntary waiver of the right to counsel and subsequently removes counsel or appoints counsel in a standby capacity. *State v. Harmon,* 1997 ND 233, ¶¶ 21–23, 575 N.W.2d 635; *Dvorak,* 2000 ND 6, ¶ 15, 604 N.W.2d 445; *State v. Schneeweiss,* 2001 ND 120, ¶ 29, 630 N.W.2d 482. Here, the trial court made no such finding. Additionally, Ochoa's conduct is not in question. Rather, we are concerned with Ochoa's statements related to his right to counsel, right to self-representation, and request for hybrid counsel.

[¶ 18] Ochoa prevails if, through his statements, he clearly and intentionally, or, in other words, unequivocally, waived his right to counsel and invoked his right to self-representation. Any ambiguity will be resolved against a conclusion that Ochoa waived his constitutional right to counsel and invoked his constitutional right to self-representation. Courts must not infer waiver of constitutional rights. *State v. Wilson,* 488 N.W.2d 618, 621 (N.D.1992). "Courts should indulge every reasonable presumption against waiver." *Kranz,* 353 N.W.2d at 752.

[¶ 19] Ochoa invoked his right to counsel, under the United States and North Dakota Constitutions, and the trial court appointed counsel on July 31, 2002. Ochoa's first attorney, Russell Myhre, moved to withdraw on October 17, 2002, noting Ochoa had advised Myhre that he was planning to request Myhre's dismissal and request a new attorney be appointed. The trial court granted the withdrawal and appointed new counsel, Gary Neuharth, on October 21, 2002. On January 7, 2003, Myhre was again appointed as counsel. Myhre was removed from the case shortly after the appointment because Ochoa requested Myhre's removal and also requested new counsel be appointed. On January 28, 2003, the trial court appointed Phyllis Ratcliffe to represent Ochoa. Not only did Ochoa initially invoke his right to counsel,

the record shows he reaffirmed his exercise of this right several times.

[¶ 20] Ochoa attempted to file pro se motions, which the trial court disregarded. Ochoa points to those motions to support his assertion that he indicated to the trial court he wished to invoke his right to self-representation. However, Ochoa's first pro se motion, requesting a speedy trial, was sent to the trial court on November 6, 2002, shortly after Neuharth was appointed. After Myhre was reappointed two months later, Ochoa requested the trial court assign new counsel, and negated any possible claim he waived counsel on November 6, 2002, by filing the speedy trial motion.

[¶ 21] On February 20, 2002, Ochoa personally attempted to file a motion to suppress. On February 24, 2002, Ochoa submitted a document entitled "Notice to the Court," stating his attorney, Ratcliffe, did not plan to attend a hearing for the motion, but Ochoa waived her appearance and stated he would appear personally. This was not an unequivocal waiver of Ochoa's right to counsel. Ochoa only intended to waive Ratcliffe's appearance at a hearing related to his suppression motion, not her services for the duration of his criminal proceeding. At best, Ochoa's document is ambiguous, or equivocal, and therefore not effective as a waiver of his right to counsel.

[¶ 22] The only time Ochoa may have attempted to waive counsel and invoke his right to self-representation was after Ratcliffe was appointed. However, that alleged waiver of Ochoa's right to counsel and invocation of his right to self-representation is also equivocal. On February 19, 2003, Ochoa wrote a letter to the trial court, informing it Ratcliffe would be out of town during the expected two-day trial scheduled for April 16 and 17, 2003. Ochoa informed the trial court he did not

want another continuance and wanted the trial date moved forward, if possible, to accommodate Ratcliffe's schedule. Ochoa then stated, "[i]f this is not possible I ask Phillys [sic] Ratcliff [sic] represent until she leaves, and on the 16th of April, I will represent myself through the remainder of trial. . . . [I]f you cannot give me an earlier trial date, then let me represent myself at trial or give me another attorney." On February 20, 2003, the trial court granted Ochoa's request for an earlier trial date.

[¶ 23] Ochoa's February 19, 2003, reference to the possibility of self-representation must be read within the context of Ochoa's situation. Faced with another possible delay, Ochoa offered to represent himself for only a portion of the trial as an alternative to a continuance. Ochoa also requested appointment of a new attorney or rescheduling the trial to an earlier date as alternatives. If we agree with Ochoa that he asserted his right to self-representation in the letter, we must also conclude Ochoa simultaneously asserted his right to counsel. Clearly, these two assertions are inconsistent and do not support Ochoa's position. As we have previously stated, assertion of one right requires waiver of the other. *Dvorak*, 2000 ND 6, ¶ 11, 604 N.W.2d 445.

[¶ 24] On February 25, 2003, Ochoa moved the trial court for discovery under Rule 16(a), North Dakota Rules of Criminal Procedure. Under the "comments" section of Ochoa's motion, he stated his purpose for the request as "I will be representing myself at jury trial." On February 28, 2003, the Clerk of Court's office contacted Ratcliffe and informed her the trial court did not recognize any documents Ochoa personally filed because he was represented by counsel.

[¶ 25] Ochoa's discovery request also fails to meet the proper standard for as-

serting his right to self-representation. Again, the statement, "I will be representing myself ..." is equivocal. It is a discovery request to the State, filed with the trial court. It was filed in close proximity to his February 19, 2003, request and the trial court's February 20, 2003, order rescheduling Ochoa's trial. We have no information Ochoa was in receipt of the trial court's order at the time he drafted and filed the discovery request. It is possible Ochoa had not received the trial court order and was still unsure which of his February 19, 2003, requests the trial court might grant, including Ochoa's offer to proceed pro se. Because of the reasonable presumption against waiver, we cannot conclude Ochoa unequivocally asserted his right to self-representation and waived his right to counsel.

[¶ 26] Ratcliffe moved for clarification of her role as Ochoa's attorney on March 14, 2003. Ratcliffe's motion stated Ochoa wished to act as his own attorney prior to and during the trial and asked the trial court to delineate Ratcliffe and Ochoa's respective roles, under the parameters set forth in *State v. Poitra*, 1998 ND 88, 578 N.W.2d 121 (setting forth defendant's rights to counsel and self-representation); *State v. Hart*, 1997 ND 188, 569 N.W.2d 451 (holding no violation of defendant's right to counsel when standby counsel participated in trial because defendant must reassert right to self-representation after standby counsel participates or defendant is deemed to acquiesce to such participation); the Sixth Amendment to the United States Constitution; and article I, section 12, of the North Dakota Constitution.

[¶ 27] Ratcliffe's brief in support of her motion stated, "[Ochoa] has advised [Ratcliffe] that he desires to act as his own Attorney and to represent himself at *various stages* of the trial." (Emphasis added.) Ratcliffe informed the trial court Ochoa would require the assistance of standby counsel. Ratcliffe also requested Ochoa make a knowing and intelligent waiver of his right to counsel "on the record according to the facts and circumstances," and be made aware of the dangers and disadvantages of self-representation. Ochoa's appellate brief restates Ratcliffe's request that was made in the motion for clarification, "[I] filed a[m]otion ... citing [Ochoa] wished to conduct a *part of* his trial pro se." (Emphasis added.) On the day before trial, Ratcliffe also informed the trial court of Ochoa's desire to participate pro se, stating "the Defendant wishes to participate himself in the trial and has intimated to me he wants to do the direct and cross-examination of the witnesses.... I believe he has the right to represent himself at certain parts in the trial."

[¶ 28] After reviewing the motion and transcript, we conclude there was no unequivocal waiver of Ochoa's right to counsel, or assertion of Ochoa's right to self-representation. Rather, Ochoa's requested participation was actually a request for hybrid representation, or the ability to participate as co-counsel with his attorney. This far exceeds the role of standby counsel,[1] which Ochoa purportedly claimed to request.

[¶ 29] This Court has ruled a trial judge is not required to order "hy-

---

1. "[S]tandby counsel is merely ... available in case the court determines that the defendant is no longer able to represent himself or in case the defendant chooses to consult an attorney." *Rockwell*, 1999 ND 125, ¶ 19, 597 N.W.2d 406. The defendant maintains actual control and the standby counsel may not destroy the jury's perception that the defendant is representing himself. *Hart*, 1997 ND 188, ¶ 8, 569 N.W.2d 451. A defendant has no right to standby counsel under either the federal or state constitutions. *Rockwell*, at ¶ 18.

brid" representation. *City of Fargo v. Rockwell,* 1999 ND 125, ¶ 18, 597 N.W.2d 406 (citing *McKaskle v. Wiggins,* 465 U.S. 168, 183, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), *rehearing denied,* 465 U.S. 1112, 104 S.Ct. 1620, 80 L.Ed.2d 148 (1984)); *see also United States v. Swinney,* 970 F.2d 494, 498 (8th Cir.1992), *cert. denied,* 506 U.S. 1011, 113 S.Ct. 632, 121 L.Ed.2d 563 (1992), *cert. denied,* 507 U.S. 1007, 113 S.Ct. 1650, 123 L.Ed.2d 271 (1993) (holding, "[t]he defendant ... does not have a constitutional right to hybrid representation. That is, the defendant cannot demand the right to act as co-counsel." (citations omitted)). More importantly, "a defendant has no right to hybrid representation and a request to proceed in such a manner is not deemed an election to proceed pro se." *United States v. Treff,* 924 F.2d 975, 979 n. 6 (10th Cir.1991), *cert. denied,* 500 U.S. 958, 111 S.Ct. 2272, 114 L.Ed.2d 723 (1991). The United States Supreme Court has also held a defendant "does not have a constitutional right to choreograph special appearances by counsel." *McKaskle,* at 183, 104 S.Ct. 944. Ratcliffe's statement to the trial court regarding Ochoa's wish to conduct the direct and cross-examinations of witnesses certainly supports our conclusion of hybrid representation, as do the repeated requests for Ochoa to participate in various parts of the trial, rather than an unequivocal request to represent himself.

[¶ 30] Ochoa argues the trial court improperly failed to inquire into his desire to represent himself, and the trial court had a clear and unambiguous obligation to conduct a colloquy with Ochoa to determine if the waiver is knowing, voluntary, and intelligent. We have already determined Ochoa did not unequivocally waive his right to counsel nor did he assert his right to self-representation. Thus,

without any such waiver or assertion, there is no need for the trial court to conduct a colloquy or inquire into Ochoa's wishes. "Appellate courts have required more than an equivocal request for self-representation before they engage in a full-blown *Faretta* inquiry." *Reese v. Nix,* 942 F.2d 1276, 1280 (8th Cir.1991), *cert. denied,* 502 U.S. 1113, 112 S.Ct. 1220, 117 L.Ed.2d 457 (1992); *see State v. Parker,* 886 S.W.2d 908, 926 (Mo.1994), *cert. denied,* 514 U.S. 1098, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995) (holding, "[a]bsent a clear and unequivocal assertion of the right to self-representation, the trial court is obligated neither to permit self-representation nor to conduct a hearing"); *see also Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (citations omitted) (holding, "in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits [of counsel].... [The accused] should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.").

[¶ 31] After reviewing the entire record, we conclude Ochoa did not unequivocally waive his right to counsel, nor did he unequivocally invoke his right to self-representation. Therefore, the trial court did not err when it ordered Ochoa to proceed to trial with representation. We conclude there were no constitutional violations of Ochoa's right to self-representation.

## IV

[¶ 32] Ochoa argues he was denied his right to speedy trial, as guaranteed by the Sixth Amendment to the United States Constitution; article I, section 12, of the North Dakota Constitution; and section 29–01–06(5) of the North Dakota Century Code. *See State v. Johnson,* 1999

ND 33, ¶ 21, 590 N.W.2d 192. Ochoa's counsel moved for a speedy trial on August 28, 2002. Ochoa's trial commenced March 31, 2003, more than seven months after his initial speedy trial request. Ochoa personally wrote a letter to the trial court judge on November 6, 2002, requesting trial be set as soon as possible. Ochoa then moved pro se to dismiss his case, based on the trial delay.

[¶ 33] We consider four factors in determining the validity of a speedy trial claim: length of the delay, reason for the delay, the accused's proper assertion of the right to a speedy trial, and actual prejudice to the accused. *Johnson*, 1999 ND 33, ¶ 21, 590 N.W.2d 192 (citing *State v. Murchison*, 541 N.W.2d 435, 438 (N.D. 1995) (citing *Barker v. Wingo*, 407 U.S. 514, 531–33, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972))). While all factors must be weighed, " 'no single factor is controlling.' " *Johnson*, at ¶ 21 (quoting *State v. Connery*, 441 N.W.2d 651, 655 (N.D.1989)).

[¶ 34] We first consider the length of the delay. Eight months passed between the date of Ochoa's arrest and the commencement of his trial. However, we have already stated no one factor is controlling and have specifically stated, " 'the length of the delay is not controlling by itself.' " *Murchison*, 541 N.W.2d at 439 (quoting *State v. Wunderlich*, 338 N.W.2d 658, 661 (N.D.1983)). In *Murchison*, we held an eleven-month delay was not presumptively prejudicial. *Murchison*, at 438–39.

[¶ 35] Next, we consider the reason for the delay. Ochoa unconvincingly argues the reason for the delay cannot be attributed to him. There is no showing the State intentionally delayed trial to impair Ochoa's defense. *See Murchison*, at 439. At least some of the causes for the delay appear to be related to Ochoa's four appointments of counsel and various motions to the trial court, despite Ochoa's

contention that there is no showing the changes are reasonably attributable to him. New counsel requests are relevant to a speedy trial claim. *See State v. Runck*, 418 N.W.2d 262, 265–66 (N.D. 1987). Although the appointments were not necessarily requested by Ochoa, there is reason to believe Ochoa's actions contributed to the various appointments. The record shows Ochoa's first attorney moved to withdraw on October 17, 2002, approximately one month before the original trial date. The first attorney's motion cited the basis for withdrawal as "total, complete, and irreparable breakdown of the Attorney–Client relationship, including . . . [Ochoa's] lack of cooperation."

[¶ 36] The effect of Ochoa's motions, filed by counsel, may also properly be considered in determining his speedy trial claim. *See Runck*, 418 N.W.2d at 266. Ochoa's first attorney moved to extend the motions filing deadline when he withdrew, to allow the newly-appointed attorney adequate time to prepare. Ochoa's second attorney moved to suppress evidence on November 14, 2002, approximately one week before the original trial date. The trial court ruled on the suppression motion on February 10, 2003. Considering the appointments of counsel and various intervening motions filed in this case, we conclude Ochoa's actions reasonably attributed to the delay.

[¶ 37] The third factor, assertion of the right, is satisfied. Ochoa properly asserted his right by moving for a speedy trial, through counsel, on August 28, 2002. However, the final factor, actual prejudice to the accused, is not present here. Under the fourth factor, actual prejudice can take three forms: oppressive pretrial incarceration, anxiety and concern caused by the delay, and an impaired defense. *Murchison*, 541 N.W.2d at 439. Ochoa argues he

suffered an impaired defense. According to Ochoa, he was not able to raise bail and his resulting incarceration prevented him from interviewing witnesses to adequately prepare for trial.

[¶ 38] The record does not support Ochoa's contention that his defense was impaired because he could not interview witnesses. Ochoa asserts his incarceration, not pretrial delay, impaired his defense. In *State v. Dilger*, 338 N.W.2d 87, 92 (N.D.1983), we determined no speedy trial violation occurred, noting the trial court had established bail conditions that the defendant did not meet. "[Defendant] has not demonstrated that the delay caused any evidence or testimony to be lost, or impaired his defense in any other way." *Murchison*, at 439. Ochoa makes conclusory allegations of an impaired defense, which we have stated will not prove prejudice. *See Murchison*, at 439. Ochoa failed to prove he suffered any actual prejudice resulting from pretrial delay. Under the four factors used to analyze a speedy trial claim, Ochoa was not deprived of his right to a speedy trial. The length of the delay was not presumptively prejudicial. Ochoa suffered no actual prejudice and the reasons for delay are reasonably attributable to Ochoa.

## V

[¶ 39] The criminal judgment is affirmed.

[¶ 40] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.