2006 ND 104

**In the Interest of C.S.**

**Adam O. Miller, Psy. D., Petitioner
and Appellee**

v.

**C.S., Respondent and Appellant.**

**No. 20060116.**

Supreme Court of North Dakota.

May 11, 2006.

Thomas E. Merrick, Jamestown, N.D., for respondent and appellant.

Leo A. Ryan, Special Assistant Attorney General, Jamestown, N.D., for petitioner and appellee.

MARING, Justice.

[¶ 1] C.S. appeals from a trial court's order committing him to continuing treatment in the State Hospital for one year and an order allowing the State Hospital to involuntarily medicate him. We hold that the evidentiary record does not disclose that C.S. knowingly, intelligently, and voluntarily waived his right to counsel. We reverse and remand.

I

[¶ 2] C.S. came to the attention of the State after being incarcerated on a charge of fleeing police officers. While incarcerated, a nurse in the mental health unit supplied C.S. with a dose of headache medicine. C.S. then accused the nurse of sedating him, sodomizing him, and giving him the HIV virus. C.S. made threats to kill the nurse and staff he claimed were trying to take his "evidence" of the nurse's alleged acts. C.S. also claimed to be the brother of Jesus Christ, claimed to be able to control the weather, and threatened that God would destroy the Garrison Dam. C.S. was also refusing to take care of his personal hygiene.

[¶ 3] C.S. was transferred to the State Hospital because of these incidents and an order committing him to hospitalization for ninety days was entered on December 28, 2005. A State request to involuntarily medicate C.S. was denied by the trial court on January 12, 2006. C.S. was allowed to represent himself at both the hearing for the initial commitment and the hearing on the request to involuntarily medicate.

[¶ 4] On March 16, 2006, near the end of the initial ninety-day commitment, a hearing was held on a motion by the State to continue treatment and a new motion to involuntarily medicate C.S. Although counsel for C.S. was appointed and initially present, C.S. again asked to represent himself. The trial court granted the request and counsel was dismissed. C.S's request for a continuance was granted and the hearing was continued until March 23, 2006.

[¶ 5] According to testimony presented at the March 23 continuing treatment hearing, C.S. suffers from paranoid schizophrenia, grandiose type, and anti-social personality disorder. Testimony presented revealed that C.S. has threatened another patient at the State Hospital, threatened to kill a ward clerk after accusing her of interfering with his mail, and encouraged other patients to kill staff. C.S. has told State Hospital staff that he is the second son of the heavenly father and has a number of women picked out to be his "wives." According to testimony, C.S. will use these wives and other individuals to perform public sexual acts so as to inform the public that they are sinning and show them how they are sinning. Two of these wives are to be two "genetically perfect" women in Texas and another is to be a female employee of the postal service. C.S. has said that if he fails in his duties, there will be no resurrection. C.S. has also made threats against his neighbor, accusing her of leaving him penniless and threatening to beat her. He also made a

"veiled threat" to his neighbor's daughter that he would kill her if she did not try to help him escape. C.S. has a history of violence and past criminal activity. C.S. was also known to fire weapons at home on his farm and, after his arrest, a number of firearms were taken from his property. The State requested that C.S.'s commitment continue for one year and that the State have the authority to involuntarily medicate him with Risperdal, or in the alternative, Haldol, with twenty-four hours notice.

[¶ 6] Although the trial court repeatedly gave C.S. the opportunity to present a case, C.S. did not speak at any point during the hearing.

[¶ 7] On appeal, C.S. argues his waiver of representation by counsel was not valid.

## II

■■■ [¶ 8] We review a claim of invalid waiver of counsel in a mental health proceeding de novo. *See City of Fargo v. Habiger*, 2004 ND 127, ¶ 18, 682 N.W.2d 300 (discussing standard of review on denial of right to counsel in the criminal context); *see also In Interest of Ebertz*, 333 N.W.2d 786, 788 (N.D.1983) (stating procedures followed in a mental health proceeding "generally are comparable and similar to those followed in criminal cases").

■■■ [¶ 9] A respondent in an involuntary commitment proceeding has a due process right to counsel. *Interest of J.B.*, 410 N.W.2d 530, 532 (N.D.1987); *Interest of R.Z.*, 415 N.W.2d 486, 488 (N.D.1987). This right is embodied in our civil commitment statutes:

Right to counsel—Indigency—Waiver—Recoupment—Limitations.

1. Every respondent under this chapter is entitled to legal counsel. The counsel has access to the respon-

dent's medical records upon proof of representation.

2. Unless an appearance has been entered on behalf of the respondent, the court shall, within twenty-four hours, exclusive of weekends or holidays, from the time the petition was filed, appoint counsel to represent the respondent. If a respondent retains counsel, the retained counsel shall immediately notify the court of that fact.

. . . .

4. If the court determines that the respondent is indigent, the court shall order that appointed counsel be compensated from county funds of the county that is the respondent's place of residence in a reasonable amount based upon time and expenses. After notice and hearing, the court may order a respondent with appointed counsel to reimburse the county for expenditures made on the respondent's behalf.

N.D.C.C. § 25–03.1–13. This statute also expressly allows a respondent to waive counsel:

3. If, after consultation with counsel, the respondent wants to waive the right to counsel or the right to any of the hearings provided for under this chapter, the respondent may do so by notifying the court in writing. The notification must clearly state the respondent's reasons for the waiver and must also be signed by counsel.

*Id.* We have recognized, however, that a respondent waiving his right to counsel is "as a purely factual matter" relinquishing "many of the traditional benefits associated with the right to counsel." *Interest of R.Z.*, 415 N.W.2d at 488 (quoting *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). As such, we re-

quire, as we do in the criminal context, that a waiver of counsel be knowing, intelligent, and voluntary. *Id.* In *Interest of R.Z.,* we also said that the trial court must determine the competence of the respondent to make a valid waiver. *Id.* Although we said, "we rely on criminal cases to define the rights of respondents in mental health proceedings" and that the record must disclose the valid waiver, we did not make explicit how this would effect a determination of competency to waive counsel. *See id.* This case gives us the opportunity to provide more direction to our trial courts on these matters.

[¶ 10] The right of a respondent in mental health proceedings to waive counsel is not universally recognized. *See, e.g., In re Irwin,* 529 N.W.2d 366, 371 (Minn.App. 1995) (stating that neither statute nor rules of commitment give a respondent the right to represent himself); *see also* Mont. Code Anno. § 53–21–119 ("The right to counsel may not be waived."); *see generally* 53 Am.Jur.2d *Mentally Impaired Persons* § 40 (2006) (stating: "The right of an individual to waive counsel and proceed with self-representation in a civil-commitment proceeding varies among the states from allowing self-representation as in other suits, to giving the court discretion as to whether waiver and self-representation should proceed, to making the presence of counsel unwaivable."). Some courts have found that the test for waiver of counsel in the mental health context is not as demanding as in the criminal context. *See United States v. Veltman,* 9 F.3d 718, 721 (8th Cir.App.1993) (stating "we are satisfied that the statutory right to counsel may be waived in a [mental health] proceeding under conditions less exacting than the Sixth Amendment requirements in a criminal trial"). Our legislature has not endorsed the approach of jurisdictions like Minnesota. We do not accept, however, that a respondent should be granted

less protection than a criminal defendant in the context of waiver of counsel. In an effort to steer a middle course, we have said that, in an involuntary treatment hearing, our courts must take "great care to assure the public, and particularly the respondent, of due process and that the procedures are in accordance with the principles of law and justice." *In re Ebertz,* 333 N.W.2d at 789.

[¶ 11] Our Court has recognized the conceptual difficulty that can arise when a court must consider both whether a respondent is competent to waive counsel and also whether the respondent's mental condition necessitates involuntary treatment. We have said: "[I]t appears inherently contradictory to find a respondent severely mentally ill, yet able to knowingly and intelligently 'waive' his right to counsel." *Interest of R.Z.,* 415 N.W.2d at 488; *see also In the Matter of Condition of S.Y.,* 162 Wis.2d 320, 469 N.W.2d 836, 842 (1991) (stating: "There undoubtedly is a logical tension between a finding of competence [to waive counsel] ... and the ultimate finding of the very proceeding in which the defendant goes it alone when the final decision ... is mental illness.").

[¶ 12] A trial court must be mindful that our statutes prevent a presumption of incompetence to arise simply due to the fact that mental health proceedings are being undertaken against the respondent.

Legal incompetence—Presumption—Finding—Adjudication negated.

1. No determination that a person requires treatment, no court order authorizing hospitalization or alternative treatment, nor any form of admission to a hospital gives rise to a presumption of, constitutes a finding of, or operates as an adjudication of legal incompetence, or of the

inability to give or withhold consent.

2. No order of commitment under any previous statute of this state, in the absence of a concomitant appointment of a guardian, constitutes a finding of or operates as an adjudication of legal incompetence, or of the inability to give or withhold consent.

N.D.C.C. § 25–03.1–33. Under the statute, a respondent who has previously been treated, voluntarily or involuntarily, for a mental health condition cannot be presumed legally incompetent to waive counsel on account of that treatment. In *Interest of R.Z.*, we stated:

In an involuntary commitment proceeding where the very competence of the respondent is at issue, the trial court must determine the competence of the respondent to make a knowing and intelligent waiver of the right to counsel *before* permitting the respondent to proceed pro se.

415 N.W.2d at 488 (emphasis added). Implicit is that the determination of competence to waive counsel must be made before the proceeding may go forward if the respondent is to represent himself.

■■■ [¶ 13] Our trial courts must recognize a distinction between what are two separate and independent determinations in mental health proceedings. First, the trial court determines competence for the limited purpose of assessing the respondent's ability to knowingly, intelligently, and voluntarily waive counsel. This determination must occur at the beginning of the proceeding and must keep in mind the presumption that the respondent is competent. Assuming nothing overcomes the presumption that respondent is competent, the trial court proceeds to determine if the respondent's waiver of counsel is knowing, intelligent, and voluntary. If the respondent has shown competence to waive counsel, and has shown his waiver is knowing, intelligent, and voluntary, the proceeding may continue with the respondent representing himself pro se. However, in some cases, as the proceeding continues, doubt may be cast on the presumption that the respondent is competent to represent himself. In such cases, the trial court should reassess its determination of the respondent's competence to waive counsel and act accordingly. The ultimate determination of whether the respondent's condition necessitates the treatment requested by the State must be determined at the conclusion of the hearing, and only after all of the evidence is presented.

■■■ [¶ 14] For the record to disclose a valid waiver, it must mirror the record of a valid waiver in a criminal proceeding. *See In re Ebertz*, 333 N.W.2d at 789; *Interest of R.Z.*, 415 N.W.2d at 488. In the criminal context, we have said:

Criminal defendants who proceed pro se necessarily relinquish many of the benefits associated with the right to counsel, and in order to proceed pro se, they must voluntarily, knowingly, and intelligently relinquish the benefits of counsel. A defendant need not have the skill and experience of a lawyer to competently and intelligently choose self-representation, but the defendant should be aware of the dangers and disadvantages of self-representation so the record establishes the choice is made with eyes open.

*State v. Dvorak*, 2000 ND 6, ¶ 10, 604 N.W.2d 445. This echoes what we said previously about waiver of counsel in a mental health proceeding:

[A] respondent in a mental health proceeding may waive counsel and assert the right to self-representation, only if the waiver is knowing and intelligent

and voluntary and only if it appears on the record. Absent evidence of a knowing, intelligent and voluntary waiver of counsel, a respondent in an involuntary commitment proceeding may not represent himself.

*Interest of R.Z.*, 415 N.W.2d at 488. Admittedly, we have had greater opportunity to discuss at greater length the procedures a trial court should utilize when assessing a waiver of counsel in the criminal setting:

An unavoidable tension exists between the right to counsel and the right to self-representation, because asserting one right necessitates a waiver of the other. In recent years, we have become increasingly involved with the tension between those mutually exclusive rights. In *Harmon*, 1997 ND 233, ¶ 23 n. 1, 575 N.W.2d 635, we acknowledged increasing problems with defendants who proceed pro se, and suggested "[t]rial courts should be careful to make specific on-the-record determinations about whether a defendant unequivocally, knowingly, and intelligently waived either his right to counsel or self-representation. Such a determination should make clear the dangers and disadvantages of self-representation." Although we have not required trial courts to engage in a specific colloquy with a defendant who appears pro se, we prefer that trial courts eliminate any ambiguity about a waiver by making a specific on-the-record decision the defendant voluntarily, knowingly, and intelligently waived the right to counsel. Our preference for an on-the-record determination parallels the well-established principle that a waiver of the right to counsel will not be presumed from a silent record and courts will indulge every reasonable presumption against waiver.

*Dvorak*, 2000 ND 6, ¶ 11, 604 N.W.2d 445 (citations omitted). We believe, however,

it is evident from *In Interest of R.Z.* that these principles should also apply in the mental health commitment proceeding setting. *See* 415 N.W.2d at 488. Therefore, we expect in a mental health proceeding where the respondent wishes to represent himself, that the trial court would engage in a colloquy with the respondent before allowing respondent to proceed pro se. This colloquy must ensure that the respondent is advised of the dangers and disadvantages of self-representation. After doing so, the trial court should make its determination, on the record, of respondent's competence to make a valid waiver and if that waiver was indeed validly made. As in the criminal context: "Courts should indulge every reasonable presumption against waiver." *State v. Ochoa*, 2004 ND 43, ¶ 18, 675 N.W.2d 161.

[¶ 15] We acknowledge that, in some cases, "there is a pattern of obstructing the legal process" wherein "the right to counsel becomes a means by which a defendant can further obstruct the legal process by rejecting court-appointed counsel or retaining and discharging private counsel, all the while insisting the desire for and right to counsel." *See Dvorak*, 2000 ND 6, ¶ 15, 604 N.W.2d 445. In such cases, in the criminal context, we have said that a defendant can functionally waive counsel, but that the waiver still must be intelligent and knowing. *Id.* at ¶ 16. As in the criminal context, whether a respondent knowingly and intelligently waived the right to counsel will require an examination of the record and the facts and circumstances of the particular case to determine if the respondent had the required knowledge to make the choice "with eyes open." *See id.* As in the criminal context, the test in a mental health case would not be limited to what the trial court said, but would take into account the respondent's experience with the legal system and focus on what he understood. *See id.*

[¶ 16] An additional factor, usually not present in criminal cases, must be considered in mental health cases. Unlike in the criminal context, the capacity and competence of a respondent in mental health cases can potentially vary from one proceeding to the next. A respondent incapable of waiving counsel at one hearing may, due to treatment or other factors, gain that capacity by the next hearing. This, in part, is why N.D.C.C. § 25–03.1–33 forbids a presumption against a respondent's legal capacity from arising simply due to previous mental health treatment. Similarly, a respondent who one time had the capacity to proceed pro se can, by the time of the next hearing, no longer possess this capacity. For this reason, the trial court must assess the validity of a waiver of counsel and competence to make that waiver before each proceeding during which the respondent wishes to represent himself.

[¶ 17] By assessing the competence and validity of a waiver on the record before each proceeding, the trial court will also aid a reviewing court on appeal. Often in mental health cases, the appellate court receives only the transcript of the proceeding at issue in the appeal. If the colloquy that established a respondent's waiver occurred at a prior proceeding, it often would not be available to the reviewing court.

[¶ 18] The facts in this case demonstrate our holding here and the reasoning behind it. By the time of the March 16 hearing, C.S. had represented himself on two prior occasions and had been successful in one of the proceedings. He also had a record of past legal problems that establishes a potential familiarity with the legal system. The State Hospital argues these facts show C.S. could knowingly and intelligently make a waiver of counsel that both parties acknowledge was voluntary. Nev-

ertheless, because transcripts of the prior hearings were not present in this record, we cannot determine if C.S. previously was made aware of and understood the advantages of counsel and the disadvantages of proceeding pro se.

[¶ 19] Nor does the record demonstrate that C.S. was made aware of the disadvantages of pro se representation at the March 16 hearing. At the beginning of the March 16, hearing, the following exchange occurred between the trial court, C.S., and counsel appointed for C.S.:

> MR. SANDNESS: Yes, your Honor, I was duly appointed I believe last week by the Court. I went and visited [C.S.] last week, he indicated he did not want my services. I informed the Court of such and they requested I appear today nonetheless in case he did request my services. When Mr. Ryan and the doctors were out of the room I did ask [C.S] if he wanted my assistance again today and he indicated he did not, but I told him I would be in the gallery here and be able to help him if he had any questions.

> [C.S.]: I don't want an attorney, I don't use the services of attorneys.

> THE COURT: You understand you have a right to have an attorney to represent you in these proceedings, do you understand that?

> [C.S.]: I think I understand it, I don't want an attorney though.

> THE COURT: What do you mean you think you understand it?

> [C.S.]: I deny the jurisdiction of this court over me, nevertheless, I'm going to deal with—I'm going to continue on. I am not going to hire an attorney or have one represent me. I'm a sovereign—

> THE COURT: Do you want Mr. Sandness to remain in the courtroom to

assist you in case you need his assistance?

[C.S.]: No, I don't.

THE COURT: All right, Mr. Sandness, you're free to go, [C.S.] has waived his right to counsel.

It is implicit here that the trial court correctly presumed that C.S. was competent to waive counsel by the very fact that it allowed C.S. to proceed pro se. However, the trial court did not establish on the record that C.S. understood the disadvantages of proceeding without counsel. In fact, C.S.'s comments that he thinks he understands his right to an attorney, coupled with his subsequent comments, should have put the trial court on notice that C.S. was possibly not making his choice with eyes open. By not presenting on the record a colloquy establishing a knowing and intelligent waiver of counsel at the start of the March 16, 2006, hearing, the trial court erred.

[¶ 20] The March 16 hearing, however, did not determine the ultimate issue of whether C.S.'s commitment should continue and whether he should be involuntarily medicated. Even if we assume, which we do not, that counsel was validly waived on March 16, the proceedings at the March 23 hearing should also have included another colloquy to determine respondent's competence to waive counsel.

[¶ 21] We recognize the additional burden we place on our trial courts by requiring a determination of respondent's competence to validly waive counsel at each hearing in a mental health proceeding. However, the nature of these cases, the nature of the records of these cases on appeal, and the need to ensure a respondent's rights are protected necessitates such an effort. *See In Interest Ebertz*, 333 N.W.2d at 789.

### III

[¶ 22] Because the trial court did not establish on the record that C.S.'s waiver of counsel was knowing and intelligent, we reverse and remand for further proceedings in accordance with this opinion.

[¶ 23] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.