2006 ND 188

**In the Interest of B.L.S.**

**Rick Eckroth, Petitioner and Appellee**

v.

**B.L.S., Respondent and Appellant.**

No. 20060216.

Supreme Court of North Dakota.

Aug. 28, 2006.

Brian D. Grosinger (argued), Assistant State's Attorney, Mandan, N.D., for petitioner and appellee.

Greg I. Runge (argued), Bismarck, N.D., for respondent and appellant.

B.L.S. (appeared), respondent and appellant.

KAPSNER, Justice.

[¶ 1] B.L.S. appeals from a district court order requiring him to be hospitalized at the North Dakota State Hospital ("State Hospital") and allowing him to be treated involuntarily with medication. We reverse the district court and remand this case for new proceedings on the petition.

I

[¶ 2] B.L.S., a 44–year–old man diagnosed with paranoid schizophrenia, was incarcerated in the Morton County Correctional Center. Staff at the correctional center noticed B.L.S.'s behavior progressively worsen during his incarceration. After three months, a correctional officer petitioned the district court to involuntarily commit B.L.S. to the State Hospital. The petition alleged that B.L.S. had washed his undergarments in a toilet that he had just defecated in; taken three-hour

showers; stood in the toilet, flooding his cell; refused his medications; wrote pages of incoherencies; chronically masturbated; had extreme hygiene problems; had a violent disposition; and was delusional. The officer believed that hospitalization was necessary to prevent B.L.S. from injuring himself.

[¶ 3] The district court appointed Greg Runge to serve as B.L.S.'s counsel before the preliminary hearing. At the hearing, however, B.L.S. sought to represent himself. The court allowed B.L.S. to do so, but did not excuse Runge. The court did not engage in a colloquy, on the record, to determine whether B.L.S. was competent to waive counsel or whether B.L.S.'s attempted waiver was knowingly, intelligently, and voluntarily made. After the hearing, the district court issued an emergency treatment order, finding probable cause to believe that B.L.S. was mentally ill and required treatment. B.L.S. was committed to the State Hospital for no more than 14 days. A treatment hearing before a different judge was set within the 14 days.

[¶ 4] While at the State Hospital, B.L.S.'s treating psychiatrist, Dr. William Pryatel, requested a court order to authorize the forcible use of medication. B.L.S. had been refusing medication prescribed to control his severely high blood pressure and to support his renal function. Dr. Pryatel concluded that without the prescribed medication, B.L.S. could experience total renal failure within a week, have a stroke, slip into a coma, and possibly die. B.L.S. also refused psychotropic medication used to treat his mental illness. Dr. Pryatel certified that hospitalization and forced medication constituted the least restrictive alternative in treating B.L.S. Dr. Diana Robles confirmed that the proposed psychotropic medications were clinically appropriate and were the least restrictive

form of intervention necessary to meet B.L.S.'s needs.

[¶ 5] On July 11, 2006, the district court held a treatment hearing to determine whether the involuntary committal should continue and whether B.L.S. should be subjected to forced medication. B.L.S. again requested to represent himself. The district court followed the same procedure as in the preliminary hearing, allowing B.L.S. to represent himself, but not excusing Runge. The court did not engage in a colloquy, on the record, to determine whether B.L.S. was competent to waive counsel; nor did it attempt to determine whether B.L.S.'s waiver was knowingly, intelligently, and voluntarily made. Runge stated during the hearing that he was merely serving as an advisor to B.L.S. and that B.L.S. was representing himself. However, at the request of the court, Runge did participate in the treatment hearing by conducting cross-examinations, making objections, and making motions to the court. Runge and B.L.S. conflicted on strategical decisions, including whether to request a continuance in order to adequately prepare to address the forced medication issue. B.L.S. also failed to make several suggested objections on the record. Runge refused to give closing arguments when asked by the court, stating, "I cannot fill in any more gaps than I have already." At the hearing's conclusion, the court found, by clear and convincing evidence, that B.L.S. was mentally ill and required treatment. The court ordered B.L.S. to involuntary treatment at the State Hospital for 90 days and authorized the forcible use of medication.

[¶ 6] Immediately following the court's order, Runge advised B.L.S. to move the court for a stay of the order of commitment pending an appeal. He also advised B.L.S. to seek a stay of execution on the order to forcibly treat B.L.S. with medi-

cation. B.L.S. ignored Runge's advice. Runge moved the court for the stays on B.L.S.'s behalf. The district court denied these motions.

## II

[¶ 7] On appeal, B.L.S. argues that the petitioner failed to show, by clear and convincing evidence, that B.L.S. was a mentally ill person requiring treatment and that forced medication was necessary. He argues that the district court erred in allowing self-representation by failing to determine whether he was competent to waive counsel and whether his waiver was knowingly, intelligently, and voluntarily made. The petitioner argues that there was sufficient evidence to determine that B.L.S. was a mentally ill person requiring treatment; the district court properly authorized forced medication; and the district court properly allowed self-representation. Since the waiver of counsel issue is dispositive in this appeal, we need not decide B.L.S.'s first two arguments. *See Johnson v. Johnson*, 2001 ND 109, ¶ 13, 627 N.W.2d 779 (holding that the supreme court need not answer questions that are not necessary to the determination of an appeal); *Tracy v. Central Cass Pub. Sch. Dist.*, 1998 ND 12, ¶ 7, 574 N.W.2d 781 (addressing only a dispositive issue on appeal).

## III

■ [¶ 8] Our review of a claim of an invalid waiver of counsel in a mental health proceeding is de novo. *In re C.S.*, 2006 ND 104, ¶ 8, 713 N.W.2d 542; *see also Interest of Ebertz*, 333 N.W.2d 786, 788 (N.D.1983) (providing that the civil rights of a respondent in a mental health proceeding mirrors the rights afforded in criminal cases). The respondent in an involuntary commitment proceeding has a right to counsel. N.D.C.C. § 25–03.1–13(1); *C.S.*, at ¶ 9; *Interest of R.Z.*, 415

N.W.2d 486, 488 (N.D.1987); *Interest of J.B.*, 410 N.W.2d 530, 532 (N.D.1987). The commitment statute also contemplates a waiver of counsel, allowing a respondent to do so by notifying the court in a writing, signed by counsel, which clearly states the reasons for waiving counsel. N.D.C.C. § 25–03.1–13(3).

[¶ 9] The respondent's waiver of counsel is, "as a purely factual matter relinquishing many of the traditional benefits associated with the right to counsel. As such, we require ... that a waiver of counsel be knowing, intelligent, and voluntary." *C.S.*, at ¶ 9; (internal quotations omitted); *see also R.Z.*, at 488 (noting that the waiver of counsel in mental health proceedings mirrors waivers in the criminal context); *Interest of D.S.*, 263 N.W.2d 114, 120 (N.D.1978). This Court has, however, recognized:

> the conceptual difficulty that can arise when a court must consider both whether a respondent is competent to waive counsel and also whether the respondent's mental condition necessitates involuntary treatment. We have said: "[I]t appears inherently contradictory to find a respondent severely mentally ill, yet able to knowingly and intelligently 'waive' his right to counsel."

*C.S.*, at ¶ 11 (quoting *R.Z.*, at 488). Therefore, we require that a waiver of counsel be disclosed on the record. *See id.* at ¶¶ 19–22.

■ [¶ 10] On the issue of waiver, a district court must make two separate determinations in each mental health proceeding. *Id.* at ¶¶ 12–13. In *C.S.*, we set forth the applicable standard, which provides:

> First, the trial court determines competence for the limited purpose of assessing the respondent's ability to knowingly, intelligently, and voluntarily waive counsel. This determination must occur

at the beginning of the proceeding and must keep in mind the presumption that the respondent is competent. Assuming nothing overcomes the presumption . . . the trial court proceeds to determine if the respondent's waiver of counsel is knowing, intelligent, and voluntary. If the respondent has shown competence to waive counsel, and has shown his waiver is knowing, intelligent, and voluntary, the proceeding may continue with the respondent representing himself pro se. However, in some cases, as the proceeding continues, doubt may be cast on the presumption that the respondent is competent to represent himself. In such cases, the trial court should reassess its determination of the respondent's competence to waive counsel and act accordingly. The ultimate determination of whether the respondent's condition necessitates the treatment requested by the State must be determined at the conclusion of the hearing, and only after all of the evidence is presented.

*Id.* at ¶ 13. That is, in order to establish a proper waiver of counsel in a mental health proceeding, the district court must engage in a colloquy on the record, which must mirror the record in a waiver of counsel in the criminal context. *Id.* at ¶ 14; *see also R.Z.,* 415 N.W.2d at 488; *State v. Dvorak,* 2000 ND 6, ¶ 10, 604 N.W.2d 445 ("[T]he defendant should be aware of the dangers and disadvantages of self-representation so the record establishes the choice is made with eyes open."). Absent such evidence on the record, a respondent in an involuntary commitment proceeding cannot represent himself. *C.S.,* 2006 ND 104, ¶ 14, 713 N.W.2d 542 (quoting *R.Z.,* at 488).

■ [¶ 11] In this case, the district court did not engage in a colloquy regarding the respondent's competency to waive counsel at the preliminary hearing or at the treatment hearing. Additionally, no inquiry was made into whether B.L.S.'s attempted waiver was knowing, intelligent, and voluntary. *Id.* at ¶ 13. Neither judge informed B.L.S. of the potential dangers and disadvantages of self-representation. *See id.* Nevertheless, B.L.S. was allowed to represent himself in these proceedings. Both judges, however, required Runge to stay and serve as an advisor to B.L.S.

■ [¶ 12] The problem here is that the district court allowed a hybrid of self-representation and representation by counsel. *See State v. Ochoa,* 2004 ND 43, ¶¶ 29–31, 675 N.W.2d 161 (criminal defendants have no right to hybrid representation) (collecting cases); *Dvorak,* 2000 ND 6, ¶ 11, 604 N.W.2d 445 (holding that the right to self-representation and the right to counsel are mutually exclusive); *see also generally* 3 Wayne R. LaFave et. al., *Criminal Procedure* § 11.5(g) (2d ed.1999) (analyzing the criminally accused's right to hybrid representation). In doing so, the court essentially made B.L.S. and Runge "co-counsel." *Ochoa,* at ¶ 28. This case illustrates the difficulties that arise when a respondent representing himself and his attorney disagree on trial strategy, which is traditionally within the purview of "counsel." *See* N.D.R. Prof. Conduct 1.2(a) (2006) ("A lawyer may take such action on behalf of the client as impliedly authorized to carry out the representation."). Throughout Runge's representations to the court, he was clear that he was not serving as B.L.S.'s attorney and that B.L.S. was representing himself. Runge refused to offer a closing argument, stating, "I cannot fill in any more gaps than I have already," since he was only an "assistant" to B.L.S. Runge considered himself merely standby counsel and he and B.L.S. disagreed on many issues traditionally reserved for "counsel," including the decision

to request a continuance under N.D.C.C. § 25–03.1–18.1(1)(b). To prevent such confusion, the district court must make an appropriate record on the issue of waiver of counsel. *See C.S.*, 2006 ND 104, ¶ 13, 713 N.W.2d 542. If counsel is waived in a mental health proceeding, an attorney can only function as standby counsel, providing limited assistance to the respondent when necessary. *See City of Fargo v. Rockwell*, 1999 ND 125, ¶ 19, 597 N.W.2d 406 (defining role of standby counsel); *State v. Hart*, 1997 ND 188, ¶ 8, 569 N.W.2d 451 (defining limits on standby counsel's unsolicited participation). " 'As the word "standby" implies, standby counsel is merely to be available in case the court determines the defendant is no longer able to represent himself or in case the defendant chooses to consult an attorney.' " *Rockwell*, at ¶ 19 (quoting *United States v. Windsor*, 981 F.2d 943, 947 (7th Cir.1992)). We have stated, however, that:

> We do not intend to limit a trial court's discretion ... to control the mode and order of interrogating witnesses and presenting evidence. Thus, if a respondent is found unable to validly waive the assistance of counsel, but wishes to participate in the proceedings in addition to counsel's participation, the trial court is free to allow such procedure.

*R.Z.*, 415 N.W.2d at 489, n. 2 (citations and internal quotations omitted). Under such circumstances, it should be clear that counsel, and not the respondent, is conducting the hearing.

### IV

[¶ 13] Since the district court failed to engage in a colloquy regarding B.L.S.'s competency to waive counsel and to determine whether B.L.S.'s waiver was knowingly, intelligently, and voluntarily made, we conclude that the district court erred in requiring B.L.S. to be hospitalized and allowing him to be treated involuntarily with medication. Therefore, we reverse the district court and remand this case for new proceedings on the petition.

[¶ 14] GERALD W. VANDE WALLE, C.J., WILLIAM F. HODNY, S.J., CAROL RONNING KAPSNER, DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., concur.

[¶ 15] The Honorable WILLIAM F. HODNY, S.J., sitting in place of SANDSTROM, J., disqualified.